**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ECOLAB INC. AND ECOLAB USA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-00170-RGA |
| | ) | |
| SC JOHNSON PROFESSIONAL GROUP | ) | **JURY TRIAL DEMANDED** |
| LIMITED (F/K/A DEB GROUP LIMITED) | ) | |
| AND DEB IP LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS ECOLAB INC.  AND ECOLAB USA INC.'S
FIRST AMENDED COMPLAINT**

Plaintiffs Ecolab Inc. and Ecolab USA Inc. (collectively "Plaintiffs" or Ecolab"), for their

First Amended Complaint against Defendants SC Johnson Professional Group Limited ("SCJP,"

f/k/a Deb Group Limited) and Deb IP Limited (where "SCJP" and "Deb IP Limited" are referred

to herein, individually and collectively, as "Deb," "Deb Group," "SCJP," and/or "Defendants"),

hereby allege as follows:

**NATURE OF THE ACTION**

1.      Ecolab brings this action: (a) for a declaratory judgment that Ecolab has certain

enforcement rights with respect to patents owned by Deb Group as identified and defined in the

license agreement between Deb Group and Ecolab USA Inc. entered into in March 2013 with an

effective date of January 1, 2013 (hereinafter, "License Agreement"), as amended on June 27,

2022 (hereinafter, "License Amendment"), where such rights have in excess of $75,000 in value;

(b) judgment for breach of contract by Deb Group for breach of its obligations under the License

Agreement and License Amendment by refusing to provide, and/or deliberately interfering with,

contractually required cooperation with Ecolab's enforcement rights under the contract; (c)

judgment for tortious interference with prospective economic advantage related to Ecolab's enforcement rights under the contract; and (d) judgment for the breach of the covenant of good faith and fair dealing in connection with Ecolab's enforcement rights under the contract; and for each of the respective claims (b), (c), and (d), Ecolab seeks damages in excess of $75,000 and certain equitable relief as further defined herein.

<div align="center">**PARTIES**</div>

### A. Plaintiffs Ecolab Inc. and Ecolab USA Inc.

2.      Plaintiff Ecolab Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Ecolab Place, Saint Paul, Minnesota 55102.

3.      Plaintiff Ecolab USA Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Ecolab Place, Saint Paul, Minnesota 55102.

4.      Ecolab manufactures, markets, and sells, among other things, non-aerosol, alcohol-based, foaming hand sanitizers and other skin care products.

### B. Defendants SC Johnson Professional Group Limited (f/k/a Deb Group Limited) and Deb IP Limited

5.      On information and belief, Deb Group Limited was a company organized under the laws of England, having a principal place of business at Denby Hall Way, Denby, Ripley, Derbyshire DE5 8JZ, United Kingdom. On or about March 2015, Deb Group Limited was acquired by S.C. Johnson & Son, Inc. On or about January 2019, Deb Group Limited changed its name to SC Johnson Professional Group Limited.

<div align="center">2</div>

6.      On information and belief, SC Johnson Professional Group Limited is a company organized under the laws of England, having a principal place of business at Denby Hall Way, Denby, Ripley, Derbyshire DE5 8JZ, United Kingdom.

7.      On information and belief, Deb IP Limited is a company organized and existing under the laws of England, is an affiliate of SC Johnson Professional Group Limited, and also has its principal place of business at Denby Hall Way, Denby, Ripley, Derbyshire DE5 8JZ, United Kingdom.

8.      For purposes of this Complaint, the term "Deb Group" will be used to refer to Deb Group Limited, SC Johnson Professional Group Limited, and/or Deb IP Limited, collectively and/or individually, as appropriate in context.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 based upon diversity of the parties and because the amount in controversy is reasonably expected to exceed $75,000.  Further, this Court also separately has jurisdiction over the subject matter of this action under 28 U.S.C. § 1338 because Plaintiffs' interests at issue in this suit derive at least in part under the patent laws and judgment regarding the existence of, or scope, of Plaintiffs' rights at issue in this suit involve rights arising under the patent laws, and/or involve resolution of substantial questions under the patent laws.

10.      This Court has jurisdiction over the declaratory judgment claim under 28 U.S.C. §§ 2201 and 2202.

11.      This Court has jurisdiction over Deb Group because it consented to the jurisdiction of this Court in the License Agreement. D.I. 2, Exh. A (License Agreement). In Section 16 of the License Agreement, the parties agreed that any lawsuit related to the License

3

Agreement shall be brought in the State or Federal Courts of Delaware, and shall be governed and construed according to the laws of Delaware. D.I. 2, Exh. A (Section 16).

12.     This Court has jurisdiction over Deb IP Limited because Deb Group has assigned the patents covered by the License Agreement to Deb IP Limited, and the License Agreement requires that any lawsuit related to the License Agreement be brought in the State or Federal Courts of Delaware.

13.     Venue is proper in this judicial district because Deb Group is bound by its contractual agreement that venue in this district is proper. Venue is also proper in this judicial district under 28 U.S.C. § 1391.

14.     Deb Group is a foreign corporation not residing in any United States district and may be sued in any judicial district. 28 U.S.C. § 1391(c).

15.     Deb IP Limited is a foreign corporation not residing in any United States district and may be sued in any judicial district. 28 U.S.C. § 1391(c).

## BACKGROUND

16.     The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

**A.  The License Agreement Entered Into In 2013 ("the License Agreement")**

17.     On or about March 8, 2013, Ecolab USA Inc. and Deb Group Ltd. entered into a non-exclusive License Agreement related to technology concerning "silicone surfactant containing foaming alcohol hand sanitizers for use in non-aerosol foam pump dispensers." D.I. 2, Exh. A (Section 1.1) .

18.     The License Agreement has an effective date of January 1, 2013. D.I. 2, Exh. A (Section 11).

4

19.     Pursuant to the License Agreement, Deb Group granted Ecolab "a non-exclusive, royalty-bearing license under the Deb Group patents and under DEB GROUP's know-how to make, have made, use, sell, offer for sale, import or otherwise dispose of ECOLAB Licensed Products in all countries in which DEB GROUP has applied for patent protection of the DEB GROUP Technology." D.I. 2, Exh. A (Section 2).

20.     The Deb Group Patents are defined in Exhibit A of the License Agreement, and include U.S. Patents Nos. 8,263,098; 8,309,111; 8,313,758; and all reissues, re-examinations, divisionals, continuations, continuations in part, and all foreign counterparts (collectively, "the Exhibit A Patents"). D.I. 2, Exh. A (Exh. A to the License Agreement).

21.     Since the License Agreement's effective date, Deb Group has been granted three additional U.S. patents, U.S. Patents Nos. 8,679,516; 8,685,422; and 8,691,255; and has an application pending before the U.S.P.T.O., Application No. 14/938,663. D.I. 2, Exh. A (Section 1.1 & Exh. A to the License Agreement). These three additional U.S. patents also are licensed patents under the License Agreement (collectively, "the Later-Issued Licensed Patents"). If any patent issues from Application No. 14/938,663, it too will be a licensed patent (and, if such patent issues during the pendency of this litigation, it should be considered part of "the Later-Issued Licensed Patents").

22.     The Exhibit A patents, together with the Later-Issued Licensed Patents, shall collectively be referred to herein as "the Deb Group Patents."

23.     The License Agreement is between Deb Group and its affiliated and associated companies, and Ecolab USA Inc. and its affiliated and associated companies.

24.     Deb IP Limited is the current owner of the Deb Group Patents and, along with Deb Group, is required to comply with Deb Group's obligations to Ecolab under the License Agreement concerning the Deb Group Patents.

25.     The Ecolab Licensed Products are defined in the License Agreement as: "(i) silicone surfactant containing foaming alcohol hand sanitizers, and (ii) silicone surfactant containing foaming alcohol hand sanitizers formed according to any Licensed Methods, and (iii) silicone surfactant containing foaming alcohol hand sanitizers stored in or dispensed from an unpressurized dispenser, that practice at least one claim of a DEB GROUP Patent in the country in which that Product is used, manufactured, sold, or offered for sale or resale." D.I. 2, Exh. A (Section 2).

26.     As part of the License Agreement, Deb Group and Ecolab bargained for, and agreed to, a provision by which Deb Group gave Ecolab the right to enforce the Deb Group Patents in certain circumstances, and to retain any recoveries of the result of such enforcement. This agreement was set forth in Section 4.1 of the License Agreement.

27.     Section 4.1 of the License Agreement provided:

4.1  DEB GROUP will take commercially reasonable steps to enforce its patents. Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers at its own expense, including payment of all expenses incurred by DEB GROUP if it is necessary for DEB GROUP to be a party to the litigation. The non-litigating party will provide all reasonable cooperation, in a non-pecuniary way, in pursuing such actions against such third party infringers. In the event there is a recovery under an action brought by either party, the litigating party shall receive all recoveries.

D.I. 2, Exh. A (Section 4.1).

**B.  Background To Parties' Litigation In 2021 Related To The License Agreement**

28.     Before COVID became a widespread concern, and independent of any issues related to COVID, Ecolab undertook a review of the License Agreement, and whether the parties were satisfying their respective obligations under it. Among other issues, Ecolab identified as a pertinent question whether Deb Group was in compliance with the Most Favored Licensee clause in Section 7 of the License Agreement.

29.     On March 25, 2020, Ecolab wrote to Deb Group, requesting that Deb Group disclose certain information so that Ecolab could confirm that it was getting the benefit of Section 7, and paying the correct royalty rate.

30.     Deb Group responded on April 24, 2020, refusing to identify any third-party infringer who had taken a license to the Deb Group Patents, or their royalty rates. Deb Group summarily contended that Deb Group had complied with the MFL provision.

31.     Ecolab responded on May 6, 2020, making it clear that Ecolab was entitled to know the identities of the third-party infringers who took a license to the Deb Group Patents—both to confirm Deb Group's compliance with the MFL provision, as well as its obligations under Section 4.1 of the License Agreement.

32.     After further correspondence between the parties, Ecolab wrote to Deb Group on May 14, 2020, providing further explanation that the License Agreement entitled Ecolab to evidence confirming that Deb Group had complied with both Section 4.1 and the MFL provision in Section 7.

33.     In subsequent communications, including an email of June 12, 2020, Deb Group made statements that provided evidence that Deb Group had failed to comply with its obligations under Section 4.1.

34.     Ecolab responded on July 9, 2020, in part explaining that Deb Group's communications made it clear that Deb Group had breached Section 4.1, both by failing to use "commercially reasonable steps" to enforce its patents against third-party infringers of the Deb Group Patents, and by failing to inform Ecolab of Deb Group's election not to enforce.

35.     After further correspondence involving other issues, on September 9, 2020, Ecolab wrote Deb Group expressing additional concerns regarding Ecolab's rights under Section 4.1, and requested Deb Group confirm it had not engaged in conduct that adversely affected those rights.

### C. Ecolab Provides A Draft Complaint Which Included Allegations Related To Obviousness-Type Double Patenting

36.     After further correspondence between the parties, Ecolab wrote Deb Group on October 19, 2020, asserting that for Ecolab to protect its rights with respect to the License Agreement, it would need to pursue litigation, and Ecolab provided a draft complaint to Deb Group setting forth Ecolab's claims. (October 19, 2020 Letter from B. Farney to M. Harlin (including draft complaint referred to hereinafter as "Draft Complaint")).

37.     Included in the Draft Complaint was an assertion by Ecolab that certain claims of the Deb Group Patents were invalid for obviousness-type double patenting, and for that reason, the Deb Group Patents could not be enforced against Ecolab after September 29, 2024.

38.     The Draft Complaint alleged that some, but not all, of the claims of the Deb Group Patents were invalid under the obviousness-type double patenting doctrine. For example, in paragraph 140 of the Draft Complaint, Ecolab stated that it sought "a declaration that claims of the '111 patent are invalid."

39.     In the Draft Complaint, Ecolab did not seek a declaration that "all" claims of the '111 patent were invalid. In paragraph 150, Ecolab alleged that "Ecolab is entitled to a declaration that at least one or more claims of the '111 patent are invalid…".

40.     In the Draft Complaint, Ecolab did not seek a declaration that "all" claims of the '111 patent were invalid. In Section H of the Prayer for Relief, Ecolab expressly sought a declaration that "at least one or more claims of the '111 patent are invalid for obviousness-type double patenting as may be proven at trial, including but not limited to" a long list of enumerated claims that expressly did not include claim 29.

41.      Ecolab did not in the Draft Complaint, nor elsewhere in communications with Deb Group, ever allege that all claims of the '111 patent were invalid, and specifically never alleged that claim 29 of the '111 patent is invalid under the doctrine of obviousness-type double patenting.

42.     Ecolab made clear the Draft Complaint was a draft intended to advise Deb Group of the claims Ecolab believed it had, but was subject to revision.

43.     After receiving the Draft Complaint from Ecolab on or about October 19, 2020, Deb Group wrote Ecolab on December 2, 2020, and informed Ecolab that it "does not intend to take the position that Ecolab must pay royalties on Ecolab's . . . sale, offer for sale or resale of [Ecolab's hand sanitizer products] in the U.S. after September 29, 2024 based on" the '111 patent and '758 patent.

44.     Deb Group's letter of December 2, 2020 made it clear that Deb Group would not assert the Deb Group Patents against Ecolab after September 29, 2024 because of the issue of obviousness-type double patenting raised by Ecolab in the Draft Complaint.

45.     In later written communications, Deb Group has communicated its position that all of the claims of the Deb Group Patents are unenforceable after September 29, 2024 in view of the obviousness-type double patenting issue. *See* D.I. 2, Exh. I (Nisbet-Farney letter of November 30, 2022) & Exh. J (SCJP-Ecolab letter of December 1, 2022); D.I. 21 at pp. 19-20.

46.     Deb Group's insistence in these later written communications that all claims of the Deb Group Patents are unenforceable after September 29, 2024 in view of the obviousness-type double patenting issue is incorrect, both as a matter of law and fact.

**D.  Not All Claims Of The Deb Group Patents Are Invalid Under The Obviousness-Type Double Patenting Doctrine Because At Least Claim 29 Of The '111 Patent Is Not Invalid**

47.     Analysis of the claims in the '111 patent demonstrate that claim 29 is not invalid under the obviousness-type double patenting doctrine.

48.     When analyzing an issued patent to determine whether the claims are invalid for obviousness-type double patenting, the invalidity analysis must be performed for each individual claim that a party is attempting to invalidate.

49.     A claim-by-claim assessment of the '111 patent demonstrates that at least claim 29 of the '111 patent is not invalid under the doctrine of obviousness-type double patenting.

50.     During prosecution of the Deb Group Patents, the United States Patent and Trademark Office ("Patent Office") required Deb Group to file terminal disclaimers for four of its six U.S. Patents: U.S. Patent No. 8,263,098; U.S. Patent No. 8,679,516; U.S. Patent No. 8,685,422; and U.S. Patent No. 8,691,255. Accordingly, these patents expire on September 29, 2024.

51.     The Patent Office did not require Deb Group to file terminal disclaimers for Deb Group's U.S. Patent Nos. 8,309,111 and 8,313,758.

52.     As a result of patent term adjustments, on their face U.S. Patent No. 8,309,111 expires on January 25, 2030, and U.S. Patent No. 8,313,758 expires on March 12, 2029.

53.     Claim 29 of the '111 patent is not invalid due to obviousness-type double patenting. Claim 29 depends from claim 28, which depends from claim 25, which depends from claim 1, reads as follows:

> 29. The unpressurized dispenser of claim 28, wherein the foamable composition comprises ethanol and isopropanol.

54.     There are a number of differences between claim 29 of the '111 patent and the rest of the claims of the Deb Group Patents which make claim 29 patentably distinct and not invalid due to obviousness-type double patenting, including that claim 29 claims two distinct alcohols: ethanol and isopropanol.

55.     In addition to claiming two distinct alcohols, ethanol and isopropanol, claim 29 claims a single foam stabilizer, glycerin, does not limit the amount of foam stabilizer in the composition, and does not specifically claim additional components such as moisturizer, emollients, and/or lipid layer enhancers. In addition, claim 29 has a preamble that may be found to be limiting and requires "[a]n unpressurized dispenser having a dispenser pump for mixing a composition with air and dispensing foam, the dispenser storing a foamable composition." On the basis of these differences, among other reasons, claim 29 is not invalid under the obviousness-type double patenting doctrine.

56.     Deb Group, as the party that licensed the Deb Group Patents to Ecolab as part of the License Agreement (as amended), and collected, and is collecting, royalties under that License Agreement, is estopped from denying the validity of its patent claims.

**E.  Third-Party Infringers That Infringe Claim 29 Of The '111 Patent**

57.     There are third parties that manufacture and/or sell foaming hand sanitizer products in the United States that meet the claim limitations of claim 29 of the '111 patent (hereinafter, "Infringing Foam Hand Sanitizer Products"). Third parties making and/or selling Infringing Foam Hand Sanitizer Products in the United States shall be referred to herein as the Ethanol-Isopropanol Sanitizer Companies. These Ethanol-Isopropanol Sanitizer Companies include Sanitizer Company A and Sanitizer Company B, each of which are further described below.

58.     On information and belief, Sanitizer Company A makes and/or sells Infringing Foam Hand Sanitizer Products, and has sales of such products in the United States in excess of $20,000,000 per year.

59.     Sanitizer Company A's Infringing Foam Hand Sanitizer Products include those listed by Sanitizer Company A on the FDA's National Drug Code Directory website (https://www. accessdata. fda.gov/scripts/cder/ndc/dsp_searchresult.cfm), and a copy of the product label for each of Sanitizer Company A's Infringing Foam Hand Sanitizer Products can be found on the National Library of Medicine DailyMed website (https://dailymed.nlm.nih.gov/dailymed/index. cfm). The product labels for each of Sanitizer Company A's Infringing Foam Hand Sanitizer Products confirms use of both ethanol and isopropanol.

60.     On information and belief, Sanitizer Company A has been selling in the United States Infringing Foam Hand Sanitizer Products, and will continue to do so.

61.     On information and belief, annual U.S. sales of Sanitizer Company A's Infringing Foam Hand Sanitizer Products are in excess of $20,000,000.

62.     On information and belief, the value of Ecolab's right to enforce the Deb Group Patents against such sales by Sanitizer Company A is at least 5% of the annual sales, or at least $1,000,000 annually.

63.     The period for which Ecolab would have the right to enforce the Deb Group Patents against Sanitizer Company A would be from September 30, 2024 until the expiration date of the '111 patent on January 25, 2030.  This is a period of approximately 5 years and 4 months.

64.     On information and belief, Ecolab's right to enforce the Deb Group Patents with respect to Sanitizer Company A has a value of at least $5,330,000.

65.     On information and belief, Sanitizer Company A made and/or sold products in the United States that were covered by at least one valid claim of the Deb Group Patents during a period of time in which Sanitizer Company A did not have a royalty-bearing license to the Deb Group Patents.

66.     On information and belief, Sanitizer Company A makes and/or sells products in the United States that are covered by at least one valid claim of the Deb Group Patents and will continue to do so on and after September 30, 2024, at which time Sanitizer Company A will not be subject to a royalty-bearing license, and at which time Deb Group has elected not to enforce the Deb Group Patents, thereby leaving Sanitizer Company A subject to enforcement with respect to the Deb Group Patents by Ecolab, which has not granted Sanitizer Company A any license, nor committed any act giving rise to a waiver or estoppel.

67.     Deb Group, consistent with and pursuant to Section 4.1 of the License Agreement (as amended), has elected to not enforce the Deb Group Patents against Sanitizer Company A after September 29, 2024. On the basis of Section 4.1 (as amended), Ecolab has the right to

enforce the Deb Group Patents, including at least claim 29 of the '111 patent against Sanitizer Company A for any use by Sanitizer Company A of the Deb Group Patents after September 29, 2024.

68.     On information and belief, after September 29, 2024, Sanitizer Company A will be making, using, and/or selling a product covered by at least one valid claim of the Deb Group Patents for which Deb Group has affirmatively communicated it will not enforce the Deb Group Patents, and therefore after September 29, 2024, Sanitizer Company A will be a "third party infringer" within the meaning of Section 4.1 of the License Agreement.

69.     On information and belief, even if Deb Group's position that "third party infringer" as used in Section 4.1 of the License Agreement does not apply to a company that has taken a license from Deb Group with respect to the Deb Group Patents, even where Deb Group has subsequently affirmatively communicated it will not enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, Sanitizer Company A still qualifies as a "third party infringer" under Section 4.1 of the License Agreement because Sanitizer Company A made, used, and/or sold products covered by the Deb Group Patents prior to, or in a period not encompassed by, any license between Deb Group and Sanitizer Company A.

70.     On information and belief, Sanitizer Company A will continue to make and/or sell products in the United States that are covered by at least one valid claim of the Deb Group Patents after September 29, 2024, and Deb Group has elected after that date not to enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer

14

enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication.

71.     On information and belief, while keeping it secret from Ecolab, Deb Group informed Sanitizer Company A that after September 29, 2024, Deb Group would no longer be enforcing the Deb Group Patents against Sanitizer Company A, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication.

72.     On information and belief, Sanitizer Company B has been selling in the United States its Infringing Foam Hand Sanitizer Products, and will continue to do so.

73.     On information and belief, Sanitizer Company B makes and/or sells Infringing Foam Hand Sanitizer Products, and has sales of such products in the United States in excess of $500,000 per year.

74.     Sanitizer Company B's Infringing Foam Hand Sanitizer Products include those listed by Sanitizer Company B on the FDA's National Drug Code Directory website (https://www. accessdata. fda.gov/scripts/cder/ndc/dsp_searchresult.cfm), and a copy of the product label for each of Sanitizer Company B's Infringing Foam Hand Sanitizer Products can be found on the National Library of Medicine DailyMed website (https://dailymed.nlm.nih.gov/dailymed/index.cfm). The product labels for each of Sanitizer Company B's Infringing Foam Hand Sanitizer Products confirms use of both ethanol and isopropanol.

75.     On information and belief, the value of Ecolab's right to enforce the Deb Group Patents against such sales by Sanitizer Company B is at least 5% of the annual sales, or at least $25,000 annually.

76.     The period for which Ecolab would have the right to enforce the Deb Group Patents against Sanitizer Company B would be from September 30, 2024 until the expiration date of the '111 patent on January 25, 2030.  This is a period of approximately 5 years and 4 months.

77.     On information and belief, Ecolab's right to enforce the Deb Group Patents with respect to Sanitizer Company B has a value of at least $130,000.

78.     On information and belief, Sanitizer Company B made and/or sold product in the United States that were covered by at least one valid claim of the Deb Group Patents during a period of time in which Sanitizer Company B did not have a royalty-bearing license to the Deb Group Patents.

79.     On information and belief, Sanitizer Company B makes and/or sells products in the United States that are covered by at least one valid claim of the Deb Group Patents and will continue to do so on and after September 30, 2024, at which time Sanitizer Company B will not be subject to a royalty-bearing license, and at which time Deb Group has elected not to enforce the Deb Group Patents, thereby leaving Sanitizer Company B subject to enforcement with respect to the Deb Group Patents by Ecolab, which has not granted Sanitizer Company B any license, nor committed any act giving rise to a waiver or estoppel.

80.     Deb Group, consistent with and pursuant to Section 4.1 of the License Agreement (as amended), has elected to not enforce the Deb Group Patents against Sanitizer Company B after September 29, 2024. On the basis of Section 4.1(a) (as amended), Ecolab has the right to

enforce the Deb Group Patents, including at least claim 29 of the '111 patent against Sanitizer Company B for any use by Sanitizer Company B of the Deb Group Patents after September 29, 2024.

81.     On information and belief, after September 29, 2024, Sanitizer Company B will be making, using, and/or selling a product covered by at least one valid claim of the Deb Group Patents for which Deb Group has affirmatively communicated it will not enforce the Deb Group Patents, and therefore after September 29, 2024, Sanitizer Company B will be a "third party infringer" within the meaning of Section 4.1 of the License Agreement.

82.     On information and belief, even if Deb Group's position that "third party infringer" as used in Section 4.1 of the License Agreement does not apply to a company that has taken a license from Deb Group with respect to the Deb Group Patents, even where Deb Group has subsequently affirmatively communicated it will not enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, Sanitizer Company B still qualifies as a "third party infringer" under Section 4.1 of the License Agreement because Sanitizer Company B made, used, and/or sold products covered by the Deb Group Patents prior to, or in a period not encompassed by, any license between Deb Group and Sanitizer Company B.

83.     On information and belief, Sanitizer Company B will continue to make and/or sell products in the United States that are covered by at least one valid claim of the Deb Group Patents after September 29, 2024, and Deb Group has elected after that date not to enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer

enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication.

84.     On information and belief, while keeping it secret from Ecolab, Deb Group informed Sanitizer Company B that after September 29, 2024, Deb Group would no longer be enforcing the Deb Group Patents against Sanitizer Company B, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication.

**F.   The 2021 Litigation Between Ecolab And Deb Group**

85.     After Deb Group informed Ecolab on December 2, 2020 that Deb Group "does not intend to take the position that Ecolab must pay royalties on Ecolab's . . . sale, offer for sale or resale of [Ecolab's hand sanitizer products] in the U.S. after September 29, 2024" based on the '111 patent and '758 patent, the parties engaged in further correspondence related to their various disputes but were unable to resolve them.

86.     On or about May 20, 2021, Ecolab filed suit against Deb Group in this Court for breach of contract, alleging breaches by Deb Group of Sections 4.1 and 7 of the License Agreement. *Ecolab Inc. et al v. SC Johnson Professional Group, Limited et al*, No. 1:21-cv-720 (D. Del. May 20, 2021) (hereinafter, "the 2021 Litigation").

87.     On September 15, 2021, Ecolab filed a First Amended Complaint in the 2021 Litigation. *Ecolab Inc. et al v. SC Johnson Professional Group, Limited et al*, No. 1:21-cv-720, D.I. 20 (D. Del. Sept. 15, 2021).

**G.  Deb Group's Motion To Dismiss The 2021 Litigation And The Court's Denial**

88.     After Ecolab filed its First Amended Complaint on September 15, 2021 in the

2021 Litigation, Deb Group moved under Fed. R. Civ. P. 12(b)(6) to dismiss Count III of the

First Amended Complaint, the subject of which was Deb Group's breach of Section 4.1 of the

License Agreement by failing to provide Ecolab certain enforcement rights under that Section.

*Ecolab Inc. et al v. SC Johnson Professional Group, Limited et al*, No. 1:21-cv-720, D.I. 25 & 26

(D. Del. Oct. 22, 2021).

89.     On April 18, 2022, Magistrate Judge Thynge issued a Report and

Recommendation in the 2021 Litigation denying Deb Group's motion. *Ecolab Inc. et al v. SC

Johnson Professional Group, Limited et al*, No. 1:21-cv-720, D.I. 59 (Sealed) and 62 (Redacted)

(D. Del. Oct. 22, 2021) ("Thynge Report").

90.     In the decision, Magistrate Judge Thynge stated that a contract is considered

ambiguous (and therefore not subject to dismissal under Rule 12(b)(6)) where the language is

susceptible of more than one reasonable interpretation. *Id.* at pp. 7 & 12.

91.     Magistrate Judge Thynge, considered, and rejected as a basis for dismissal, Deb

Group's position that Section 4.1 only requires Deb Group to cooperate with Ecolab's

enforcement rights after Ecolab files a lawsuit. *Id*. at 21. Magistrate Judge Thynge found instead

that Ecolab's interpretation of Section 4.1 as requiring Deb Group's reasonable cooperation prior

to any litigation was reasonable. *Id.* at 22.

92.     Magistrate Judge Thynge, considered, and rejected as a basis for dismissal, Deb

Group's position that Ecolab failed to plead plausible damages caused by Deb Group's alleged

breaches of Section 4.1, finding that "discovery is necessary to determine whether Ecolab's

rights to secure royalties from third-party infringers has been thwarted by Deb's alleged breach [of Section 4.1]." *Id.* at 21-22.

93.     Magistrate Judge Thynge considered and rejected Ecolab's position that Deb Group's failure to respond to Ecolab's questions regarding a position taken by Ecolab regarding the scope of Ecolab's enforcement right evidenced a belief by Deb Group in the correctness of Ecolab's position, holding that "failure" of Deb Group to respond "does not implicate the reasonableness" of Deb Group's later position disagreeing with Ecolab. *Id.* at 17.

94.     On May 3, 2022, Judge Andrews adopted Magistrate Judge Thynge's Report and Recommendation denying Deb Group's motion. *Ecolab Inc. et al v. SC Johnson Professional Group, Limited et al*, No. 1:21-cv-720, D.I. 64 (D. Del. May 3, 2022).

### H.  Settlement Of The 2021 Litigation

95.     On or about May 2022, the parties entered into discussions about possibly settling the 2021 Litigation.

96.     On May 27, 2022, Ecolab sent a draft settlement agreement it believed to be consistent with the parties' conversations to that point. The May 27, 2022 draft included an initial version of what later became Section 6 of the Settlement Agreement. The relevant language in the May 27, 2022 draft was as follows: "Enforcement Confirmation: Deb Group confirms it will not seek to enforce the Deb Group Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group's licensees on and after September 30, 2024."

97.     On June 6, 2022, Deb Group responded with a revised draft, where Deb Group revised and limited the language in Section 6 to apply only as to Ecolab, rather than all of Deb Group's licensees. The relevant language in the June 6, 2022 draft was as follows: "Enforcement

Confirmation. Deb Group confirms it will not seek to enforce the Deb Group Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Ecolab on and after September 30, 2024."

98.     On June 10, 2022, Ecolab in turn responded with a revised draft, reinstating the substantive portion of what later became Section 6 of the Settlement Agreement, as it had been drafted initially, to apply to all Deb Group licensees, and not just Ecolab. The relevant language in the June 10, 2022 draft was as follows: "Enforcement Confirmation. Deb Group confirms it will not seek to enforce the DEB GROUP Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group licensees on and after September 30, 2024."

99.     In subsequent drafts exchanged by the parties in June 2022, minor changes were made to what later became Section 6 of the Settlement Agreement, but its application as to Deb Group licensees, and not solely Ecolab, remained unchanged.

100.    The first draft of Section 6 exchanged between the parties did not limit the application to Ecolab only. Instead, the first draft covered all Deb Group licensees, and it was Deb Group, in its June 6, 2022 draft, that attempted to limit the application to apply to Ecolab only. Ecolab's June 10, 2022 revision of the Section 6 provision reverted the section to what it covered originally—all Deb Group licensees.

**I.   Deb Group's Transmission Of The Executed Settlement Agreement Constitutes An Affirmative Written Communication Of An Election**

101.    On June 27, 2022, Deb Group's outside counsel forwarded Deb Group's executed copy of the Settlement Agreement and License Amendment to Ecolab's outside counsel, providing confirmation to Ecolab's Chief Intellectual Property Counsel of Deb Group's signature to the Settlement Agreement and License Amendment. In return, Ecolab's Chief Intellectual

Property Counsel authorized Ecolab's outside counsel to provide Deb Group's outside counsel with the Settlement Agreement and License Amendment executed on behalf of Ecolab by Ecolab's Chief Intellectual Property Counsel. *See* D.I. 2, Exh. B (the executed Settlement Agreement) & Exh. C (the executed License Amendment ).

102.    The 2021 Litigation was subsequently dismissed on July 5, 2022. *Ecolab Inc. et al v. SC Johnson Professional Group, Limited et al*, No. 1:21-cv-720, D.I. 72 (D. Del. July 5, 2022).

103.    Deb Group communicated the executed Settlement Agreement and License Amendment to Ecolab's outside counsel knowing and intending that Ecolab's outside counsel would provide that communication to Ecolab's Chief Intellectual Property Counsel.

104.    The executed copy of the Settlement Agreement included Section 6:

> 6. Enforcement Confirmation. Deb Group confirms it will not seek to enforce the DEB GROUP Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group licensees on and after September 30, 2024. For the avoidance of doubt, this confirmation does not impact Ecolab's or other DEB Group licensees' obligations under the License Agreement to pay royalties on the Licensed Products used, manufactured, sold or offered for sale or resale in all countries other than the U.S., for as long as the DEB GROUP Patents remain in force in those countries . . ..

D.I. 2, Exh. B (Section 6) (emphasis in original).

105.    Section 1.5 of the License Amendment, amended Section 4.1 of the License Agreement to add the following subsection:

> 4.1(a). Beginning on the Amendment Date, Deb Group shall have no affirmative obligation to ECOLAB pursuant to this Section 4.1 to take any steps to enforce its patents. No action or inaction other than an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement shall be deemed an election by Deb Group not to enforce its patents pursuant to this Section 4.1. For purposes of clarity, Ecolab acknowledges that prior to the Amendment Date Ecolab has not received any election by Deb Group to not enforce its patents, and silence by Deb Group, or any absence of communication from Deb Group, shall not be considered an affirmative communication of any election.

D.I. 2, Exh. C (Section 1.5).

106.    Section 7 of the Settlement Agreement included the following notice provision:

<u>Notice</u>. Any notice required to be delivered under or pursuant to this Settlement Agreement shall be in writing, delivered personally or sent by express courier service providing evidence of receipt, postage pre-paid where applicable, to the following addresses of the Parties (or such other address for a Party as it specifies by like notice):

<u>For Ecolab</u>:
Chief Intellectual Property Counsel
Ecolab Inc.
[*Address Information Omitted*]

With copy to:
Bryan Farney
Cassandra Klingman
FARNEY PC
[*Address Information Omitted*]

<u>For Deb Group</u>:
General Counsel
SC Johnson Professional
[*Address Information Omitted*]

With copy to:
Brian Nisbet
Winston & Strawn LLP
[*Address Information Omitted*]

D.I. 2, Exh. B (Section 7).

107.    Deb Group providing its signed Settlement Agreement to Ecolab constituted an affirmative written communication to Mr. James Smith, the Ecolab counsel identified in Section 7 of the License Agreement, and satisfied the requirements for an "election" under Section 4.1(a) of the License Agreement (as amended, where Section 1.5 of the License Amendment added Section 4.1(a) to the original Section 4.1 of the License Agreement). Section 4.1(a), added to Section 4.1 of the License Agreement by the License Amendment, only requires the

communication be provided to the identified Ecolab counsel, but it does not specify the manner in which that communication must be provided.

108.    Section 4.1(a) requires the "affirmative written communication of election" to be provided to the Ecolab counsel identified in Section 7 of the Settlement Agreement, but Section 4.1(a) does not specify the manner in which that communication must be provided.

109.    Even if Section 4.1(a) did require a particular manner of service, which it does not, the parties' prior conduct has established that it is acceptable to serve notices required by agreements between the parties, such as the License Agreement, in a manner procedurally different than the exact manner specified in the License Agreement, including that it is sufficient to serve notice on outside counsel of a party in lieu of the specified manner of service.

110.    On November 17, 2020, Deb Group sent what it referred to as a "formal notice" of a breach by Ecolab of its obligation to pay royalties under the License Agreement. Formal notice of such a breach was required by Section 9 of the License Agreement. Section 9 specifies both the persons to whom such notice must be delivered (the General Counsel and the Chief Patent Counsel), and the manner in which notice must be served. Deb Group did not comply with the requirements of Section 9, but instead sent the communication, which it termed "a formal notice" under Section 9, solely to outside counsel for Ecolab, stating that Deb Group expected Ecolab's outside counsel to "accept this Notice on behalf of Ecolab's General Counsel and Chief Patent Counsel." In serving this communication, which it deemed "formal notice" under the License Agreement, Deb Group contended that such service on Ecolab's outside counsel, where Deb Group knew that outside counsel was already engaged in the matter, was sufficient to satisfy Section 9. Deb Group took this position even though the communication it sent, which it referred to as "formal notice" under the License Agreement, was neither sent to the persons identified in

Section 9, nor in the manner required by Section 9 of the License Agreement. Ecolab agreed to Deb Group's request, and accepted the communication as formal notice. (November 17, 2020 Ltr. From M. Harlin to B. Farney).

111.   By the communication on November 17, 2020, Deb Group engaged in a practice accepted by both parties, whereby the sender of a notice required by the parties' agreement was considered satisfied where it gave substantive notice to the recipient even if it was not communicated in the literal manner required by the agreement or to the specific person(s) specified in the agreement, as long as it was sent to outside counsel for the company. By accepting this form of service, Ecolab was agreeing it could not later make a claim that it had not received notice because the formalities of Section 9 of the License Agreement were not complied with.

112.   The parties' prior practice of sending and accepting communications under their agreements in a manner not in compliance with the formalities of the notice provisions therein, and accepting such communications as being in compliance with the requirement for notice under the agreements, precludes either party from denying a communication sent by one party and received by the other party was not communicated for purposes of the agreement because the formalities of service provided in the agreement were not strictly followed. A sending party's attempt to deny a communication was sent under an agreement between the parties because the formalities of service were not strictly followed would neither be consistent with the parties' prior practice, nor consistent with the parties' intentions, nor consistent with how an objectively reasonable third party would understand the purpose of the notice provisions to be construed, and would not be reasonable.

113.    Deb Group's sending of the executed Settlement Agreement containing Section 6 to Ecolab's outside counsel was known by Deb Group to be sufficient to convey the communication regarding its election not to enforce to Ecolab, inclusive of the persons identified in Section 7 of the Settlement Agreement.

114.    Deb Group, who has admitted to sending the communication, and that it was received by Ecolab, cannot use its own failure to follow any terms of the agreement, if indeed any were not followed, to now deny such notice was sent.

115.    Deb Group's sending of the executed Settlement Agreement containing Section 6 to Ecolab's outside counsel constituted substantial compliance with the requirements of Section 4.1(a) of the License Amendment.

**J.    Communications Between Ecolab And Deb Group After The 2022 Settlement Included A December 1, 2022 Letter Sent By Deb Group That Satisfied Section 4.1 (As Amended)**

116.    Ecolab wrote to Deb Group on July 7, 2022, advising Deb Group that Section 6 of the Settlement Agreement satisfied the requirements of Section 4.1 of the License Agreement (as amended). The letter gave notice to Deb Group that Ecolab was exercising its right to enforce the Deb Group Patents after September 29, 2024, and that Ecolab expected Deb Group to honor its obligations under Section 4.1 of the License Agreement to provide reasonable cooperation in connection with this enforcement effort. D.I. 2, Exh. D (Ecolab-SCJP letter of July 7, 2022).

117.    Also, on July 7, 2022, Ecolab's counsel sent a letter to Deb Group's counsel to advise that Ecolab had sent a letter to Deb Group that same day, "acknowledging the election by SCJP not to enforce its U.S. Deb Group Patents after September 29, 2024, and advising that Ecolab exercises its rights under Section 4.1 & 4.1(a) to enforce those patents." D.I. 2, Exh. E (Farney-Nisbet letter of July 7, 2022). In the Farney-Nisbet letter of July 7, counsel for Deb

Group was advised that Ecolab had informed Deb Group that "Ecolab has determined there is a sound basis to conclude that one or more claims of the U.S. Deb Group Patents will remain valid and enforceable after September 29, 2024," and that "certain companies that make, use and/or sell foaming alcohol hand sanitizer products will infringe at least one or more of these claims, including certain companies currently licensed to Deb/SCJP." *Id.*

118.    In the Farney-Nisbet letter of July 7, Ecolab also communicated its expectation that "SCJP will fulfill its obligation under Section 4.1 to provide reasonable cooperation in" Ecolab's efforts to enforce certain claims of the Deb Group Patents. D.I. 2, Exh. E.

119.    With respect to the reasonable cooperation required of Deb Group under Section 4.1, counsel for Ecolab in the Farney-Nisbet letter of July 7 informed Deb Group's counsel that such reasonable cooperation would include that: "SCJP not communicate with any company licensed to the U.S. Deb Group Patents regarding any intentions by SCJP not to enforce one or more of its U.S. Deb Group Patents (or other patents, if relevant) after September 29, 2024, and remind[ed] SCJP to abstain from taking any action that would constitute interference with Ecolab's right to enforce the U.S. Deb Group Patents after that date." D.I. 2, Exh. E.

120.    On August 24, 2022, counsel for Deb Group responded to the notifications and positions provided in the Ecolab-SCJP letter of July 7, and the Farney-Nisbet letter of July 7, and stated that: "Ecolab has no right to enforce the U.S. Deb Group Patents after September 29, 2024 under the Settlement Agreement or License Agreement." D.I. 2, Exh. F (Nisbet-Farney letter of August 24, 2022).

121.    The Nisbet-Farney letter of August 24 also stated: "SCJP has not made, and is not making in this letter, an election not to enforce the Deb Group Patents under Section 4.1 of the

License Agreement," and that "Section 6 [of the Settlement Agreement] was not an election

under Section 4.1 of the License Agreement." D.I. 2, Exh. F.

122.    The Nisbet-Farney letter of August 24 also conveyed formal notice that Deb

Group would not cooperate with Ecolab's Section 4.1 enforcement rights, stating: "Further, your

claim that SCJP has an 'obligation to provide reasonable cooperation under Section 4.1' and

therefore must not 'communicate with any company licensed to the U.S. Deb Group Patents

regarding any intentions by SCJP not to enforce' the Deb Group Patents is not well taken. Ecolab

has no right, contractual or otherwise, to dictate to SCJP how it handles the Deb Group Patents,

or how it communicates to its licensees about this issue concerning the Deb Group Patents." D.I.

2, Exh. F.

123.    On October 3, 2022, Ecolab sent a letter to Deb Group, acknowledging receipt of

Deb Group's position "that Ecolab does not have the right to enforce the U.S. Deb Group Patents

after September 29, 2024 and that SCJP refuses to cooperate with the exercise of Ecolab's rights

regarding the same." In that same letter, Ecolab informed Deb Group that "Ecolab considers this

[position to be] a material breach of the License Agreement[.]" D.I. 2, Exh. G (Ecolab-SCJP

letter of October 3, 2022).

124.    In the Ecolab-SCJP letter of October 3, Ecolab further provided "formal notice of

SCJP's breach," and "demand[ed] that SCJP cure its breach within sixty (60) days, pursuant to

Section 14 of the License Agreement." D.I. 2, Exh. G.

125.    On that same day, October 3, 2022, Ecolab's outside counsel wrote to Deb

Group's counsel to provide "formal notice that S.C. Johnson Professional (SCJP) is in breach of

the Non-Exclusive License Agreement effective January 1, 2013 between SCJP (formerly Deb

Group, Ltd.) and Ecolab, as amended on June 27, 2022 (collectively, the 'License Agreement')."

Counsel for Ecolab further advised Deb Group's counsel that under Section 14 of the License Agreement, SCJP had "sixty (60) days to cure" the breach. D.I. 2, Exh. H (Farney-Nisbet letter of October 3, 2022).

126.    On November 30, 2022, Deb Group's counsel emailed a letter to Ecolab's outside counsel, responding to the formal notices of breach and demands for cure set forth in the Ecolab-SCJP letter of October 3, and the Farney-Nisbet letter of October 3. In that letter, counsel for Deb Group conveyed Deb Group's position that Ecolab's claim of a breach by Deb Group was "specious," and stated that: "SCJP has not, and does not in this letter, take a position on its rights and obligations under Section 4.1. In other words, contrary to [Ecolab's] assertion, there has been no breach as you have alleged." D.I. 2, Exh. I (Nisbet-Farney letter of November 30, 2022).

127.    On December 1, 2022, Deb Group sent a letter to Ecolab by express courier, stating the following: "For the reasons stated [in the Nisbet-Farney letter of November 30], and in [the Nisbet-Farney letter of August 24], SCJP did not make an election under Section 4.1 of the License Agreement, nor has SCJP refused to comply with its obligations under Section 4.1 of the License Agreement. As such, there has been no material breach of the License Agreement." D.I. 2, Exh. J (SCJP-Ecolab letter of December 1, 2022 (consisting of only page 1 of Exhibit J)).

128.    The SCJP-Ecolab letter of December 1, 2022, incorporated by reference the Nisbet-Farney letter of November 30, 2022, and also incorporated by reference the Nisbet-Farney letter of August 24, 2022. D.I. 2, Exh. J (page 1 only).

129.    The SCJP-Ecolab letter of December 1, 2022 letter from Deb Group to Ecolab, in this case sent in the manner required by Section 7 of the Settlement Agreement, is further evidence that Deb Group considered it adequate to provide notice under Section 7 by providing communications to Ecolab's outside counsel. Deb Group did not include either the November 30

letter, nor the August 24 letter as attachments, but instead incorporated both only by reference in its letter sent to Ecolab, because Deb Group knew it previously had sent both letters to Ecolab's counsel, who would have communicated them necessarily to the persons within Ecolab identified in Section 7. D.I. 2, Exh. J (page 1 only).

130.    On December 1, 2022, Deb Group mailed a copy of the SCJP-Ecolab letter of December 1, 2022 to Ecolab's outside counsel by express courier, and included a copy of the Nisbet-Farney letter of November 30, 2022, which incorporated by reference the Nisbet-Farney letter of August 24, 2022. D.I. 2, Exh. J (SCJP-Farney letter of December 1, 2022 (inclusive of all pages of Exhibit J)).

131.    The SCJP-Ecolab letter of December 1, 2022 was sent by express courier by Deb Group to Ecolab's Chief Intellectual Property Counsel and to Bryan Farney, as identified in Section 7 of the Settlement Agreement, and in the manner required by Section 7 of the Settlement Agreement.

132.    While Section 7 of the Settlement Agreement specifies that notice be made to Ecolab's "Chief Intellectual Property Counsel" who at the time was Mr. James Smith, Ecolab subsequently underwent some personnel reorganization and Mr. Smith was promoted to Deputy General Counsel, Intellectual Property, Litigation and Environmental, but remains designated as the proper person within Ecolab to be the recipient of any communications addressed to Ecolab's "Chief Intellectual Property Counsel." Accordingly, transmission by Deb Group to Ecolab's "Chief Intellectual Property Counsel" literally satisfied the notice requirements of Section 7.

133.    Any allegation by Deb Group that the SCJP-Ecolab letter of December 1, 2022 would not qualify as an affirmative written communication under Section 4.1 of the License

Agreement (as amended) on the basis of the recipients to whom it was sent, or the manner in which it was sent, would be incorrect.

134.     The SCJP-Ecolab letter of December 1, 2022 incorporated by reference the Nisbet-Farney letter of November 30, in which Deb Group's counsel provided notice to Ecolab on behalf of Deb Group that "SCJP has independently analyzed all claims of the '111 patent and '758 patent and has concluded that all are subject to an invalidity challenge due to obviousness type double patenting beyond September 29, 2024." D.I. 2, Exh. J (page 1 only) & Exh. I. This statement constituted an independent affirmative written communication to Ecolab under Section 4.1 of the License Agreement, and Section 4.1(a) of the License Agreement (as amended), of an election by Deb Group to not enforce any claims of the '111 and '758 patents against any third party after September 29, 2024.

135.     The SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30 and the Nisbet-Farney letter of August 24, includes a clear declaration by Deb Group that, after September 29, 2024 it will not be seeking to enforce, and will not enforce, its patents against any third-party infringer, inclusive of any third-party who later became licensed. As such, the SCJP-Ecolab letter of December 1, 2022, constitutes an affirmative written communication to Ecolab under Section 4.1 of the License Agreement (as amended), of an election by Deb Group to not enforce any claims of the '111 and '758 patents against any third party after September 29, 2024.

136.     Any declaration by Deb Group that after a certain date it does not intend to collect royalties, nor will it seek royalties, from any third-party infringer, inclusive of any third party who later became licensed, is a statement by Deb Group that it will not be seeking to enforce, and will not enforce, the Deb Group Patents.

137.    The SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, is sufficient, on its own, to entitle Ecolab to its rights to enforce the Deb Group Patents as set forth in Section 4.1 of the License Agreement (as amended).

**K.  Deb Group's Filing Of Its Motion To Dismiss The Original Complaint In This Case Constitutes An Affirmative Written Communication Of An Election Not To Enforce That Satisfies The Requirements Of Section 4.1 Of The License Agreement (As Amended)**

138.    On May 18, 2023, Deb Group filed in the present case its Motion to Dismiss Counts I-III of [Ecolab's] Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (hereinafter, "Deb Group's Motion to Dismiss") (D.I. 20-21).

139.    Deb Group's Motion to Dismiss was sent via email, and via the Court's ECF system, directly to a number of Ecolab-related counsel, including counsel of record in this case, Mr. Bryan Farney, Ms. Cassandra Klingman, as well as in-house counsel for Ecolab, including Mr. James Smith. These three individuals qualify as the persons identified in Section 7 of the Settlement Agreement to whom Section 4.1(a) of the License Agreement (as amended) requires Deb Group to send an affirmative written communication of an election not to enforce its patents.

140.    Included in the documents sent as part of Deb Group's Motion to Dismiss was Deb Group's Brief in Support of its Motion to Dismiss (hereinafter, "Deb Group's MTD Brief") (D.I. 21).

141.    Deb Group's MTD Brief included an unequivocal affirmative written communication by Deb Group that after September 29, 2024, Deb Group had elected to not enforce the Deb Group Patents against anyone. Indeed, Deb Group (wrongly) insisted it could not do so. As just one example of such confirmation, in contending that Ecolab did not have a

"good-faith basis to enforce [the Deb Group] patents[,]" Deb Group next stated: "[n]or does Deb Group, which has recognized that the Deb Group Patents are subject to an invalidity challenge due to obviousness-type double patenting after September 29, 2024." D.I. 21, pp. 19-20.

142.    Deb Group's MTD Brief constitutes an affirmative written communication to Ecolab, sent to the persons required by Section 4.1(a) of the License Agreement (as amended), and constitutes an "affirmative written confirmation of an election" not to enforce the Deb Group Patents within the meaning of that section, which does not specify any particular manner in which the communication must be sent.

143.    Any declaration by Deb Group that after a certain date it does not intend to collect royalties, nor will it seek royalties, from any third-party infringer, inclusive of any third party who later became licensed, is a statement by Deb Group that it will not be seeking to enforce, and will not enforce, the Deb Group Patents after that date.

144.    Any declaration by Deb Group in any communication that after a certain date it considers all of the claims of all of the Deb Group Patents to be invalid, is a statement by Deb Group that it will not be seeking to enforce, and will not enforce, the Deb Group Patents after that date.

145.    Deb Group's MTD Brief is sufficient, on its own, to entitle Ecolab to its rights to enforce the Deb Group Patents as set forth in Section 4.1 of the License Agreement (as amended).

**L.  Allegations Denying Section 6 Of The Settlement Agreement Constituted An Election Not To Enforce Under Section 4.1 (As Amended) Are Unsupported By The Language Of The Parties' Agreements And Associated Facts And Law**

146.    Nothing in Section 4.1 or 4.1(a) requires that a notice of election make express reference to either Section 4.1 or 4.1(a) by name.

147.    Nothing in Section 4.1 or 4.1(a) requires that an affirmative written communication of an election pursuant to Section 4.1 of the License Agreement (as amended) recite, pro forma, or *in haec verba*, the word "election" in order to be effective. Instead, the communication only needs to communicate that Deb Group has decided (i.e., "elected") not to enforce the Deb Group Patents. Section 6 of the Settlement Agreement does this expressly, stating "Deb Group confirms it will not seek to enforce the Deb Group Patents in the United States …."  This is an express notice of an election by Deb Group not to enforce the Deb Group Patents even though the word "election" itself is not used explicitly.

148.    Section 4.1(a) requires only that an affirmative written communication be made in a manner that it will be received by certain Ecolab counsel identified in Section 7; it does not specify that the affirmative written communication be sent in the manner specified by Section 7.

149.    Deb Group provided the executed Settlement Agreement to Ecolab's outside counsel, Bryan Farney, who is one of the persons named in Section 7. Deb Group knew Mr. Farney represented Ecolab, inclusive of its personnel, in this matter, and Deb Group sent the executed Settlement Agreement to Mr. Farney intending him to communicate it to the Ecolab personnel, including the person identified in Section 7. This is sufficient to satisfy Section 4.1(a), which only indicates the persons to whom the communication is to be directed, not the means by which it is delivered to them, and makes no exclusion for delivery by serving on counsel for such persons.

150.    Deb Group has previously engaged in delivery conduct which demonstrates its belief that any particular notice requirements in an agreement, such as the License Agreement, can be satisfied simply by providing the notice to a counsel for Ecolab whom Deb Group knows is engaged in the matter, even if such delivery does not satisfy the literal terms of the notice

provision. (November 17, 2020 Ltr. from M. Harlin to B. Farney providing what Deb Group asserted should be considered "formal notice" to outside counsel for Ecolab, alleging that Ecolab had breached the License Agreement).

151.    Deb Group's sending of the executed Settlement Agreement containing Section 6 to Ecolab's outside counsel was known by Deb Group to be sufficient to constitute an affirmative written communication to the Ecolab-related personnel identified in Section 7 of the Settlement Agreement, and to substantively comply with the requirement of notice.

152.    Deb Group is estopped from denying that Section 4.1(a) of the License Amendment has been substantially complied with because any deficiency in the manner of service, if any, would have been a consequence of Deb Group's own actions.

153.    Whether or not Section 6 itself constitutes an election by Deb Group not to enforce is not affected by Deb Group's later attempts to mischaracterize Section 6, or to assert it did not constitute an election under Section 4.1 (as amended), or that it was not intended to be such an election, or to argue it means something other than what it says. In Section 6, Deb Group affirmatively communicated in writing that "Deb Group confirms it will not seek to enforce the DEB GROUP Patents …"  This statement is a clear notice by Deb Group of an election not to enforce. Later letters by Deb Group denying it is such an election must be disregarded, as they are simply wrong, flatly contradicted by the language of Section 6 itself, contrary to common sense, inconsistent with the language of Section 6, and inconsistent with the language and intention of Sections 4.1 & 4.1(a).

154.    While Deb Group has sole discretion on whether to make an election, Section 4.1(a) makes it clear that once Deb Group makes an affirmative written communication of that election, the election is made. And nothing in Section 4.1(a) nor Section 4.1 permit such an

election to be retracted or revoked. *See* D.I. 2, Exh. A (Section 4.1 ("Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer . . . ECOLAB shall have the right")).

155.    Deb Group's contention that it has "sole discretion" to make an election is irrelevant to the question of whether Deb Group has actually made the election by sending an affirmative written communication of such an election as required by Section 4.1(a), which Ecolab contends it did. Such an election immediately vests the enforcement right in Ecolab, and Deb Group has no right under Section 4.1 & 4.1(a) to retrace or revoke an election, nor has Deb Group ever done so (beyond falsely claiming it did not make an election in the first instance).

156.    Deb Group cannot revoke its affirmative written communication of election in Section 6 that it will not enforce the Deb Group Patents, as the provision was part of a binding agreement which expressly provides that once Deb Group makes the election, the enforcement right mandatorily transfers to Ecolab. *See* D.I. 2, Exh. A (Section 4.1 ("Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers . . .")).

157.    Any allegation that Ecolab has conceded that Section 6 cannot constitute an election under Section 4.1 (as amended) because Ecolab received proposed draft agreements from Deb Group containing versions of Section 6 prior to the execution of the final settlement agreement, and that Ecolab confirmed in Section 4.1(a) that "prior to the Amendment Date Ecolab has not received any election by Deb Group to not enforce its patents," would be incorrect because the prior versions of Section 6 were merely proposed positions contingent upon Ecolab accepting the entirety of the proffered draft, and no proposed provision was proffered standing alone as a binding position. Deb Group made no binding communication of

the confirmation provided in Section 6 until it provided an executed copy of a final Settlement Agreement and License Amendment to Ecolab.

158.    Any allegation that Ecolab has conceded Section 6 did not constitute an election not to enforce by Deb Group under Section 4.1 (as amended) because Ecolab purportedly did not respond in correspondence between the parties to an allegation by Deb Group that Section 6 did not constitute an election, would be incorrect on at least two bases. First, Ecolab did expressly respond to Deb Group's assertion that Section 6 did not constitute an election by observing the assertion simply represented a dispute between the parties over contract interpretation over which Ecolab was confident in its previously stated position. *See* D.I. 2, Exh. H. Second, even if Ecolab had not directly responded (which it did), Magistrate Judge Thynge's opinion from the prior litigation involving the parties makes clear that a failure to respond is not tantamount to a concession to the other party's position. Thynge Report at p. 17. Here, while Ecolab denies it ever acquiesced in Deb Group's incorrect contention that Section 6 does not represent an election, Ecolab also denies that any purported silence by it on the topic constitutes any evidence that Ecolab has ever taken a contrary position.

159.    Any allegation that Section 6 cannot constitute an affirmative written communication of an election pursuant to Sections 4.1 & 4.1(a) because Ecolab has purportedly already agreed that all of the claims of the Deb Group Patents are unenforceable after September 29, 2024, would be incorrect because while Ecolab has agreed that many of the claims of the Deb Group Patents are invalid under the doctrine of obviousness-type double patenting, Ecolab made clear that not all claims of the Deb Group Patents are invalid on that basis. For example, Ecolab has never stated, nor agreed, that claim 29 of the '111 patent is invalid or unenforceable after September 29, 2024.

160.     In various correspondence and pleadings in this case, Deb Group has made multiple allegations that Section 6 of the Settlement Agreement does not comprise an election by Deb Group not to enforce the Deb Group Patents in a manner that would comply with Section 4.1(a) of the License Agreement (as amended). Ecolab expressly denies each and every one of these allegations.

### M. Allegations Denying The SCJP-Ecolab Letter Of December 1, 2022 Constituted An Election Not To Enforce Under Section 4.1 (As Amended) Are Unsupported By The Letter, The Language Of The Parties' Agreements And Associated Facts And Law

161.     Deb Group confirmed in the SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, that it considered all of the claims of the '111 and '758 patents to be "subject to an invalidity challenge" after September 29, 2024. D.I. 2, Exh. J (page 1 only) & Exh. I. Any allegation that this confirmation by Deb Group does not constitute an affirmative written communication of an election pursuant to Sections 4.1 (as amended) would be incorrect. This confirmation by Deb Group makes it clear that Deb Group had, and still has, no intention of enforcing claims it (wrongly) considers to be invalid. Furthermore, Ecolab was certainly reasonable in understanding this to be Deb Group's position.

162.     Deb Group's confirmation in the SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, that it considered all of the claims of the '111 and '758 patents to be "subject to an invalidity challenge" after September 29, 2024, constitutes an affirmative written communication of an election not to enforce the Deb Group Patents which Deb Group (wrongly) considers to be invalid, and such confirmation of election is not affected by, nor negated by, a bare statement elsewhere in the letter that it should not be taken as an

"election not to enforce" under Section 4.1 (as amended). When Deb Group affirms in writing that it will not be enforcing the Deb Group Patents after September 29, 2024, it has, by definition, made an "election not to enforce" even if in the same communication Deb Group attempts to evade or negate Ecolab's rights under Section 4.1 (as amended) arising from Deb Group's having made the election.

163.    The SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, includes an affirmative written communication by Deb Group that it will not enforce the Deb Group Patents after September 29, 2024, and that is all that is required to be an "election" under Sections 4.1 & 4.1(a). *See* D.I. 2, Exh. J (page 1 only) & Exh. I (stating that "SCJP has independently analyzed all claims of the '111 patent and '758 patent and has concluded that all are subject to an invalidity challenge due to obviousness type double patenting beyond September 29, 2024.").

164.    Any allegations that the SCJP-Ecolab Letter of December 1, 2022 cannot constitute an affirmative written communication of an election pursuant to Sections 4.1 & 4.1(a) on any of the bases cited in Paragraphs 146, 147, 154, 155 or 156 in this Complaint would be incorrect for the same reasons stated therein and such allegations are incorporated again herein with respect to the SCJP-Ecolab Letter of December 1, 2022.

165.    In various correspondence and its pleading in this case, Deb Group has made multiple allegations that the SCJP-Ecolab letter of December 1, 2022, did not comprise an affirmative written communication of an election by Deb Group not to enforce the Deb Group Patents in a manner that would comply with Sections 4.1 & 4.1(a) of the License Agreement (as amended) (references herein to the SCJP-Ecolab letter of December 1, 2022 shall be understood

to also mean, and refer to, the incorporation by reference in that letter of the Nisbet-Farney letter of November 30, 2022, and the Nisbet-Farney letter of August 24, 2022). Ecolab expressly denies each and every one of these allegations.

166.   To the extent such allegations by Deb Group with respect to the SCJP-Ecolab letter of December 1, 2022, have the same, or similar, bases as allegations that Section 6 of the Settlement Agreement does not constitute an affirmative written communication of an election not to enforce, Ecolab reasserts and adopts its responses to those points here as well.

**N.  Under Section 4.1 Of The License Agreement (As Amended) Ecolab Has The Right To Enforce The Deb Group Patents Against Third-Party Infringers Such As The Ethanol-Isopropanol Sanitizer Companies**

167.   The License Agreement entered into between Ecolab and Deb Group in 2013 included a license to Ecolab under the Deb Group Patents, but also did more. Ecolab bargained for, and obtained, the right enforce the Deb Group Patents against third-party infringers with respect to whom Deb Group elected not to enforce the Deb Group Patents. This right was set forth in Section 4.1 of the License Agreement. Deb Group now seeks to deprive Ecolab of the benefit of Ecolab's bargain.

168.   Section 4.1 of the License Agreement provides: "Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers . . .." *See* D.I. 2, Exh. A (Section 4.1).

169.   At least part of the parties' intentions in agreeing to Section 4.1 of the License Agreement was to permit Ecolab to secure recoveries from third parties making use of the Deb Group Patents when Deb Group elected not to do so.

170.     A right to "enforce patents" includes the right to collect royalties owed on such patents.

171.     Affirmatively electing to not collect royalties otherwise owed under a license, even if on a mistaken premise of a patent's invalidity, is not commercially reasonable enforcement of the patents.

172.     Permitting continuing infringement of the Deb Group Patents without the requirement to pay any commercially reasonable royalty was not contemplated by the parties in Section 4.1 to be "enforce[ment]" of the patents.

173.     With respect to the phrase "third party infringer" as used in Section 4.1 of the License Agreement, the parties intended, and the phrase means, any company other than Deb Group or Ecolab, who makes, uses, or sells a product covered by at least one valid claim of the Deb Group Patents, and against whom Deb Group is not enforcing the Deb Group Patents, including by affirmatively foregoing any royalties for such manufacture, use or sale. Such an interpretation of Section 4.1 of the License Agreement is consistent with the parties' intentions, consistent with how an objective reasonable third party would understand Section 4.1 of the License Agreement, and is a reasonable interpretation.

174.     A communication by Deb Group to a company who makes, uses, or sells a product covered by at least one valid claim of the Deb Group Patents, that Deb Group will not enforce the Deb Group Patents against such third party, including by affirmatively foregoing any royalties for such manufacture, use, or sale, constitutes non-enforcement of the Deb Group Patents by Deb Group within the meaning of the License Agreement, and renders that third party a third-party infringer within the meaning of the License Agreement. Such a construction is consistent with what the parties intended, and ensures Ecolab the benefit of its bargain. It would

be so construed by an objective reasonable third party, and is a reasonable construction of Section 4.1.

175.    In Section 6 of the Settlement Agreement, Deb Group "confirm[ed] it will not seek to enforce the DEB GROUP Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group licensees on and after September 30, 2024." *See* D.I. 2, Exh. B (Section 6). In confirming in Section 6 that it will not "seek to enforce" the Deb Group Patents against licensees of the Deb Group Patents, Deb Group makes it clear that such enforcement is possible. Given Deb Group's election not to enforce, that right to enforce has now vested in Ecolab.

176.    Any allegation that the use of the term "licensee" in Section 7 supports a conclusion that the phrase "third-party infringer" used in Section 4.1 does not encompass third parties that had a royalty-bearing license from Deb Group, where Deb Group has elected neither to collect royalties due under the license nor to enforce the Deb Group Patents against such third party in any other manner, would be incorrect because Section 7 is specifically directed to circumstances where different licensees are afforded different royalty rates, and does not encompass or address a situation where Deb Group is refusing to collect royalties under a license or even to enforce the Deb Group Patents at all with respect to a third party. In short, the parties intended the term "licensee" as used in Section 7 to refer to third parties paying a royalty under a license to the Deb Group Patents, not to third-party infringers who are either not licensed at all, or against whom any nominal license is not being enforced.

177.    Section 7 is only relevant to situations where different licensees pay different royalty rates under their respective licenses, and thus only addresses licensees who are paying royalties under a license that requires payment of commercially reasonable royalties—that is,

companies to which Section 4.1 would not apply. Section 4.1's application is much broader, as it addresses which party has the right to enforce the Deb Group Patents against any third party making use of the Deb Group Patents and against which the Deb Group Patents are not being enforced, including an affirmative refusal to collect royalties for the use of such patents. Allowing a third party making use of the Deb Group Patents to not pay any royalty for such use, including any royalties owed under a license, constitutes non-enforcement of the patents as the term "enforce" is used in Section 4.1.

178.    Any allegation that the Deb Group Patents cannot be "enforced" against Deb Group licensees making use of the Deb Group Patents is contradicted by the very language Deb Group used in Section 6 of the Settlement Agreement, where "Deb Group confirm[ed] it will not seek to enforce the DEB GROUP Patents . . . for activities carried out in the United States by Deb Group licensees on and after September 30, 2024."

179.    Any allegation that a patent licensee cannot have the licensed patents enforced against it would be incorrect. As one example, a licensee not paying royalties due under a license can have the patents enforced against it in a suit to collect such unpaid royalties where, in part, the suit will require proof that the products at issue are covered by the licensed patents.

180.    Any allegation that a patent licensee cannot have the licensed patents enforced against it would be incorrect. As another example, a licensee not paying royalties due under a license may be considered to have breached the license and no longer have the benefit of any such license, in which case the patents may be enforced against such licensee in a suit for infringement and damages, which may include royalties not paid during such time as the license remained in effect.

181.    Allowing continued royalty-free infringement of the Deb Group Patents, even by third parties previously the subject of a royalty-bearing license, was not contemplated by either party to constitute "enforcement" of the patents within the meaning of Section 4.1.

182.    Informing a licensee under a royalty-bearing license that the licensor will no longer seek to collect royalties otherwise owed is an election by the licensor not to enforce the patents.

183.    On information and belief, Deb Group has advised one or more third parties that are making and selling products that practice the Deb Group Patents, and have a license from Deb Group requiring the payment of commercially reasonable royalties, that after September 29, 2024 such parties will no longer need to pay, nor will Deb Group collect, royalties otherwise required by the terms of the license. On information and belief, at least some of these third parties included the Ethanol-Isopropanol Sanitizer Companies that make products covered by claim 29 of the '111 patent, which remains valid after September 29, 2024. With respect to these Ethanol-Isopropanol Sanitizer Companies, to the extent Deb Group communicated that it would not enforce the Deb Group Patents after September 29, 2024, such conduct after that date by Deb Group constitutes a failure to enforce the Deb Group Patents as the term is used in Section 4.1. To the extent Deb Group instead communicated that it would not enforce the Deb Group Patents after September 29, 2024 for the reason that all claims of the Deb Group Patents would be invalid after that date, such statement was incorrect, and represents conduct by Deb Group constituting a failure to enforce the Deb Group Patents after September 29, 2024. As set forth in the preceding paragraphs, it is Ecolab that, in these circumstances, has the right to enforce the Deb Group Patents against such third-party infringers.

184.     Magistrate Judge Thynge has already ruled in connection with the first litigation between the parties that Delaware law does not support a construction of contract provisions that would render them illusory or meaningless. Thynge Report at p. 13. Deb Group's alleged construction and/or interpretation of Section 4.1 encompasses a position that Deb Group could enter into a nominal license with a stated royalty rate with a third-party infringer, then elect not to enforce its patents, such as by not seeking the royalties due under the license, and Ecolab would be without remedy. Such a position would render Section 4.1 illusory and meaningless. Further, such a position would breach Deb Group's obligation, when it elects to enforce the Deb Group Patents, to engage in enforcement that is commercially reasonable under Section 4.1 of the License Agreement.

185.     Any allegation that the phrase "third party infringer" as used in Section 4.1 of the License Agreement does not apply to any company other than Deb Group or Ecolab that, at any point in time, has taken a license to the Deb Group Patents would be incorrect. As set forth elsewhere in this Complaint, including in this Section N, where Deb Group has affirmatively communicated to such third party that it will no longer enforce the Deb Group Patents against it, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid, such third party is a "third party infringer" within the meaning of Section 4.1 of the License Agreement. This is consistent with the meaning of Section 4.1 as the parties intended it, is consistent with how the contract would be understood by an objective, reasonable third party, and is a reasonable construction of Section 4.1.

186.     Separately, and in addition and/or in the alternative, for any third party that manufactured, used, or sold products covered by at least one valid claim of the Deb Group

Patents prior to entering into a license with Deb Group, such company was, even by Deb Group's concession, a "third party infringer," and Section 4.1 of the License Agreement has no temporal limit on when such designation should no longer apply. Such company is a "third party infringer" within the meaning of Section 4.1 of the License Agreement as the parties intended it, considering it to be such is consistent with how the contract would be understood by an objective, reasonable third party, and is a reasonable construction of Section 4.1.

187.    Interpreting the phrase "third party infringer" as used in Section 4.1 of the License Agreement to encompass any third party making, using, and selling products covered by at least one valid claim of the Deb Group Patents for which Deb Group has affirmatively confirmed it will not enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, is both a reasonable construction of the phrase, consistent with how the parties intended it, and how the contract would be understood by an objective, reasonable third party, and provides Ecolab the enforcement right for which it bargained, and for which Deb Group agreed to accept payment.

188.    For Ecolab to be afforded the enforcement rights under Section 4.1 (as amended) to which Ecolab claims to be entitled in this Complaint causes no harm nor damage to Deb Group, as Deb Group has affirmatively foregone any benefit otherwise attainable from enforcement of the Deb Group Patents against such company.

189.    On information and belief, each of the Ethanol-Isopropanol Sanitizer Companies has and is making, using and selling products covered by one or more claims of the Deb Group Patents, including at least claim 29 of the '111 patent.

190.     While the Ethanol-Isopropanol Sanitizer Companies may have had a license for some period of their infringing activity, on information and belief, the period of any such license did not extend to all of that activity, and they each were third-party infringers lacking a license for at least some period of time during which they made, used or sold product covered by at least one valid claim of the Deb Group Patents. On this basis as well, such companies are "third-party infringers" within the meaning of Section 4.1.

191.     Ethanol-Isopropanol Sanitizer Companies, including any that may have been previously licensed by Deb Group, that have been informed by Deb Group that Deb Group will not enforce the Deb Group Patents after September 29, 2024 against such company, including the foregoing of collection of royalties by Deb Group under the license, are third-party infringers within the meaning of Section 4.1 (as amended) also because after that date, any license, if any, would present no defense to royalty-free use of the patents. Instead, any defense, if any, would come from any waiver or estoppel, arising from Deb Group's improper communication with such third party in derogation of Ecolab's enforcement rights. Such communication by Deb Group, further, would not have been commercially reasonable.

192.     Ethanol-Isopropanol Sanitizer Companies, including any that may have been previously licensed by Deb Group, to which Deb Group has communicated that it will no longer enforce the Deb Group Patents after September 29, 2024, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, may still have the patents enforced against them by Ecolab, which has the lawful right to enforce the Deb Group Patents in that circumstance, and, on information and belief, such Ethanol-Isopropanol Sanitizer

Companies would be barred from relying upon any defense of validity or enforceability by the terms of their license. Such an interpretation of Section 4.1 encompasses a reasonable construction of the phrase, is consistent with how the parties intended it, and how the contract would be understood by an objective, reasonable third party, and provides Ecolab the enforcement right for which it bargained, and for which Deb Group agreed to accept payment.

193.    The reference in Section 4.1 to "third party infringers" was intended by the parties to refer to any company other than Ecolab or Deb Group who practices the Deb Group Patents. While ordinarily a third-party infringer who has a license to the Deb Group Patents requiring the payment of a commercially reasonable royalty would not be relevant to Section 4.1 because Deb Group would be, in that instance, enforcing its patents, where instead, as here, Deb Group has affirmatively elected to no longer enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer enforce the license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, Ecolab's rights to enforce arise. That was the intention of the parties. Such an interpretation of Section 4.1 encompasses a reasonable construction of the phrase, is consistent with how the parties intended it, and how the contract would be understood by an objective, reasonable third party, and provides Ecolab the enforcement right for which it bargained, and for which Deb Group agreed to accept payment.

**O.  Deb Group Has Refused To Honor Its Obligation To Provide Reasonable Cooperation With Ecolab's Enforcement Rights And Also Has Affirmatively Interfered With Such Rights**

194.    Under Section 4.1 of the License Agreement, where Ecolab has the right to assert the Deb Group Patents, Deb Group is required to "provide all reasonable cooperation." D.I. 2, Exh. A (Section 4.1).

195.     In the Ecolab-SCJP letter of July 7, and the Farney-Nisbet letter of July 7, Ecolab gave Deb Group notice that it was exercising its rights under Section 4.1 of the License Agreement to assert the Deb Group Patents, and identified reasonable cooperation that it requested from Deb Group with respect to that effort. D.I. 2, Exh. D & Exh. E.

196.     In its July 7, 2022 correspondence, Ecolab requested that Deb Group not communicate with any company licensed to the Deb Group Patents regarding Deb Group's intention not to enforce the Deb Group Patents after September 29, 2024. D.I. 2, Exh. E. Ecolab further requested that Deb Group abstain from taking any action that would constitute interference with Ecolab's right to enforce the Deb Group Patents after September 29, 2024. *Id.*

197.     On August 24, 2022, Deb Group responded to Ecolab's July 7, 2022 letter rejecting both of Ecolab's reasonable requests. D.I. 2, Exh. F. In its letter, Deb Group asserted that Ecolab had no right to dictate to Deb Group how Deb Group handles its patents, or how Deb Group communicates with its licensees concerning the Deb Group Patents. *Id.*

198.     On information and belief, Deb Group refused Ecolab's requests not to communicate with its licensees concerning Deb Group's election not to enforce the Deb Group Patents after September 29, 2024 at least in part because Deb Group had either already informed and/or intended to inform its licensees that it would not be enforcing the Deb Group Patents after that date.

199.     In the Ecolab-SCJP letter of October 3, and the Farney-Nisbet letter of October 3, Ecolab communicated to Deb Group that Deb Group's refusal to provide reasonable cooperation under Section 4.1 of the License Agreement constituted a breach of the License Agreement and provided notice to Deb Group of that breach. D.I. 2, Exh. G & Exh. H.

200.    Deb Group has refused to agree to not communicate with any company licensed to the Deb Group Patents regarding any intentions by Deb Group not to enforce one or more of its Deb Group Patents (or other patents, if relevant) after September 29, 2024 and/or by communicating to any third party that all claims of the '111 patent are invalid. D.I. 2, Exh. F.

201.    Deb Group has refused "to abstain from taking any action that would constitute interference with Ecolab's right to enforce the U.S. Deb Group Patents after [September 29, 2024]." D.I. 2, Exh. E.

202.    Deb Group's insistence that "Ecolab has no right, contractual or otherwise, to dictate to SCJP how it handles the Deb Group Patents, or how it communicates to its licensees about this issue concerning the Deb Group Patents," constitutes refusal to provide reasonable cooperation as required by Section 4.1 of the License Agreement. D.I. 2, Exh. F (page 4).

203.    The SCJP-Ecolab letter of December 1, 2022, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, communicated Deb Group's continued refusal to provide reasonable cooperation as required by Section 4.1 of the License Agreement. D.I. 2, Exh. J (page 1 only), Exh. I & Exh. F.

204.    To date, Deb Group has not cured its breach of Section 4.1 of the License Agreement set forth in the Ecolab-SCJP letter of October 3, and the Farney-Nisbet letter of October 3. D.I. 2, Exh. G & Exh. H.

205.    Any allegation that Deb Group was required by the most-favored-licensee clauses in its license agreements with third parties to communicate to those third parties the fact that Deb Group had represented to Ecolab that Deb Group would not seek to enforce the Deb Group Patents or the License Agreement against Ecolab, including by collecting royalties after

September 29, 2024, would be incorrect because Deb Group's representation does not constitute the lowering of Ecolab's royalty rate to a different royalty rate, but instead constitutes an election not to enforce the Deb Group Patents against Ecolab at all, and as such, on information and belief, does not implicate any most-favored-licensee provision of any third party. On information and belief, no most-favored-licensee provision in any of Deb Group's license agreements with third parties requires Deb Group to notify such parties of an election not to enforce the Deb Group Patents or the licenses, including by collecting royalties, in advance of the date by which such election would go into effect.

206.   Any allegation that Deb Group was required by the most-favored-licensee clauses in its license agreements with third parties to communicate to those third parties the fact that Deb Group considers all of the claims of the Deb Group Patents to be invalid after September 29, 2024 and that Deb Group will not enforce the Deb Group Patents, including by collecting any royalties, after that date would be incorrect because, on information and belief, nothing in the most-favored licensee provisions of Deb Group's license agreements with other parties requires Deb Group to notify such parties of an election not to enforce the Deb Group Patents or the licenses, including by collecting royalties.

**P.  The Counts Asserted In This Complaint Are Justiciable And Ripe**

207.   Count I as pleaded in this Complaint alleges an actual controversy meriting judicial intervention, namely a dispute between the parties over Ecolab's assertion, and Deb Group's denial, that Ecolab has the right under Section 4.1 of the License Agreement (as amended) to enforce the Deb Group Patents, and has had that right since at least June 27, 2022. Denial of that right by Deb Group is alleged by Ecolab to cause it actual and imminent injury, including but not limited to impairment of its rights to enforce the Deb Group Patents by

harming its pre-litigation preparations, by providing parties against whom the patents are to be enforced potential defenses, or alternatively the bases to assert potential defenses, that will require unneeded litigation costs and/or result in the partial or entire destruction of the economic benefit of the enforcement right to which Ecolab claims to be entitled. As such, Count I is justiciable and ripe.

208.    Count II as pleaded in this Complaint alleges an actual controversy meriting judicial intervention, namely an allegation by Ecolab, which is denied by Deb Group, that Deb Group breached, and is breaching, its obligations under Section 4 of the License Agreement (as amended) by refusing to provide contractually required cooperation with Ecolab's enforcement rights, and/or by deliberately interfering with and/or diminishing Ecolab's enforcement rights. Such interference is alleged, on information and belief, to include Deb Group's refusing to cooperate with Ecolab's reasonable requests for cooperation, and/or Deb Group's communicating to third parties against whom Ecolab has the right to enforce the Deb Group Patents, statements that derogate from Ecolab's enforcement rights, including but not limited to, making false statements that all claims of the '111 patent are invalid, and/or statements that may give rise to a defense of release, waiver or estoppel by such third parties, which must then be litigated, and which may be successful. Deb Group's breach is alleged by Ecolab to cause it actual and imminent injury, including but not limited to impairment of its rights to enforce the Deb Group Patents by harming its pre-litigation preparations, by providing parties against whom the patents are to be enforced potential defenses, or alternatively the bases to assert potential defenses, that will require unneeded litigation costs and/or result in the partial or entire destruction of the economic benefit of the enforcement right to which Ecolab claims to be

entitled, and which, if timely addressed by relief which Ecolab seeks, may be mitigated. As such, Count II is justiciable and ripe.

209.    Count III as pleaded in this Complaint alleges an actual controversy meriting judicial intervention, namely an allegation by Ecolab, which is denied by Deb Group, that Deb Group has, and is, tortiously interfering with prospective economic advantage related to Ecolab's enforcement rights under the License Agreement and License Amendment. Such tortious interference is alleged, on information and belief, to include Deb Group's communicating to third parties against whom Ecolab has the right to enforce the Deb Group Patents, statements that derogate from Ecolab's enforcement rights, including but not limited to, making false statements that all claims of the '111 patent are invalid, and/or statements that may give rise to a defense of release, waiver or estoppel by such third parties, which must then be litigated, and which may be successful. Deb Group's tortious interference is alleged by Ecolab to cause it actual and imminent injury, including but not limited to impairment of its rights to enforce the Deb Group Patents by harming its pre-litigation preparations, by providing parties against whom the patents are to be enforced defenses, or alternatively the bases to assert potential defenses, that will require unneeded litigation costs and/or result in the partial or entire destruction of the economic benefit of the enforcement right to which Ecolab is entitled, and which, if timely addressed by relief which Ecolab seeks, may be mitigated. As such, Count III is justiciable and ripe.

210.    Count IV as pleaded in this Complaint alleges an actual controversy meriting judicial intervention, namely an allegation by Ecolab, which is denied by Deb Group, that Deb Group breached, and is breaching, the covenant of good faith and fair dealing in connection with Ecolab's enforcement rights under the License Agreement and License Amendment. Such breach is alleged, on information and belief, to include Deb Group's communicating to third parties

against whom Ecolab has the right to enforce the Deb Group Patents statements that derogate from Ecolab's enforcement rights, including but not limited to, making false statements that all claims of the '111 patent are invalid, and/or statements that may give rise to a defense of release, waiver or estoppel by such third parties, which must then be litigated, and which may be successful. Deb Group's breach is alleged by Ecolab to cause it actual and imminent injury, including but not limited to impairment of its rights to enforce the Deb Group Patents by harming its pre-litigation preparations, by providing parties against whom the patents are to be enforced defenses, or alternatively the bases to assert potential defenses, that will require unneeded litigation costs and/or result in the partial or entire destruction of the economic benefit of the enforcement right to which Ecolab is entitled, and which, if timely addressed by relief which Ecolab seeks, may be mitigated. As such, Count IV is justiciable and ripe.

**Q. Allegations That Ecolab's Claims Are Not Ripe Are Unsupported By Law Or Facts**

211.    Each claim recited by Ecolab in this Complaint involves an actual controversy meriting judicial intervention, and recites that Ecolab has and is incurring actual and/or imminent injury. As such, each claim is both justiciable and ripe.

212.    Any allegation that Ecolab's claims are not justiciable and ripe because Deb Group contends it has not made an election not to enforce the Deb Group Patents would be incorrect because, elsewhere in this Complaint, Ecolab affirmatively alleges Deb Group has made such an election.

213.    Any allegation that Ecolab's claims are not justiciable and ripe because Ecolab, as one claim, seeks declaratory relief that it has the right to enforce the Deb Group Patents after September 29, 2024, and therefore any claims now by Ecolab based upon a right to enforce are premature until Ecolab's rights to enforce have been declared, would be incorrect because

Ecolab's allegations are that it has been vested with the right to enforce from the moment Deb Group made its election. D.I. 2, Exh. A (Section 4.1 ("Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers . . .")). Ecolab seeks not only a declaration that it has the right in the future, but that it has had the right since it vested, which includes a time prior to this Complaint.

214.    Any allegation that Ecolab's claims are not justiciable and ripe because there must be third-party infringers after September 29, 2024, against whom Ecolab can enforce the Deb Group Patents, and one cannot know whether there will be any third-party infringers on the market at that time, would be incorrect because Ecolab has specifically alleged, on information and belief, that there will be such third-party infringers, and such allegation is well-founded. On information and belief, at least two of the Ethanol-Isopropanol Sanitizer Companies have been making and selling in the U.S. products that are covered by at least one valid claim of the Deb Group Patents since before 2013, and it is reasonable to project that they will continue to do so for at least the next sixteen months, particularly as the products are foam hand sanitizers and are being sold in a post-COVID market.

215.    Any allegation that Ecolab's claims are not justiciable and ripe because any cooperation obligation required of Deb Group under Section 4.1 of the License Agreement does not arise until Ecolab initiates litigation, would be incorrect because Deb Group has already litigated and lost this issue in this Court in the context of a Rule 12(b)(6) motion. Magistrate Judge Thynge rejected this argument by Deb Group, finding that Ecolab's interpretation of Section 4.1 as requiring Deb Group's reasonable cooperation prior to any litigation was reasonable. Thynge Report at p. 22.

216.    Any allegation that Ecolab's claims are not justiciable and ripe because Deb Group must first actually refuse to provide "all reasonable cooperation" would be incorrect because Deb Group has been consistent in its post-settlement correspondence that it refuses to cooperate with Ecolab, and therefore has provided the actual refusal such an allegation contends is a prerequisite to Ecolab's claims being justiciable and ripe. D.I. 2, Exh. J (page 1 only), Exh. I & Exh. F. While in some correspondence Deb Group has refused to cooperate and/or insisted it has no obligation to cooperate, and in the same correspondence elsewhere contended it has not taken a position regarding whether it will cooperate, such correspondence nevertheless constitutes in substance evidence of Deb Group's refusal to cooperate in a manner required by Section 4.1. D.I. 2, Exh. I (page 2) & Exh. F. Ecolab herein asserts and alleges that Deb Group has refused cooperation, and done so in a manner that breaches Section 4.1 of the License Agreement (as amended).

217.    Any allegation that a refusal by Deb Group to provide Ecolab reasonable cooperation required under Section 4.1 (as amended) can be evaded or negated by a separate bare statement contending that such refusal should not be considered "a refusal to cooperate," would be incorrect because Section 4.1 (as amended) requires actual reasonable cooperation from Deb Group, which the communicated refusal by Deb Group makes clear will not be provided.

**R.  The Amount In Controversy Well Exceeds $75,000**

218.    In this suit, Ecolab seeks a declaratory judgment declaring that it has the right to enforce the Deb Group Patents after September 29, 2024, and for various breaches by Deb Group of its obligations under the License Agreement with respect to Ecolab's rights, and for Deb Group's tortious interference with the same.

219.    On information and belief, the value of Ecolab's right to enforce the Deb Group Patents against Sanitizer Company A is at least $5,330,000 for the period from September 29, 2024 until the '111 patent expires. Should Ecolab be successful in receiving the declaratory relief it seeks, Ecolab would be entitled to seek royalties and/or recoveries from Sanitizer Company A of at least this amount, and, at a minimum, any amounts secured by Ecolab from Sanitizer Company A would be well in excess of $75,000.

220.    On information and belief, if Deb Group's breaches of the License Agreement and/or tortious interference have not cost Ecolab its right to secure this entire amount, it has nevertheless impaired or damaged Ecolab's rights by, among other things, increasing litigation costs, and/or reducing Ecolab's potential recovery from Sanitizer Company A, by an amount in excess of $75,000.

221.    On information and belief, the value of Ecolab's right to enforce the Deb Group Patents against Sanitizer Company B is at least $130,000 for the period from September 29, 2024 until the '111 patent expires.

222.    Should Ecolab be successful in receiving the declaratory relief it seeks, Ecolab would be entitled to seek recoveries and/or royalties from Sanitizer Company B of at least this amount, and/or at a minimum, any amounts secured by Ecolab from Sanitizer Company B would be well in excess of $75,000.

223.    On information and belief, if Deb Group's breaches of the License Agreement and/or tortious interference have not cost Ecolab its right to secure this entire amount, it has nevertheless impaired or damaged Ecolab's rights, by, among other things, increasing litigation costs, and/or reducing Ecolab's potential recovery from Sanitizer Company B, by an amount in excess of $75,000.

224.     Any refusal by Deb Group to provide the contractually required cooperation with Ecolab's enforcement efforts would substantially impair Ecolab's ability to secure royalties and/or damages from the Ethanol-Isopropanol Sanitizer Companies, and such impairment would greatly exceed $75,000. Such impairment could include a reduction in the amount of royalties and/or damages Ecolab is able to secure, or an increase in costs in any litigation or pre-litigation effort to secure such recoveries.

225.     Any deliberate impairment by Deb Group of Ecolab's right to enforce the Deb Group Patents would substantially impair Ecolab's ability to secure royalties and/or damages from the Ethanol-Isopropanol Sanitizer Companies, and such impairment would greatly exceed $75,000. Such impairment could include a reduction in the amount of royalties and/or damages Ecolab is able to secure, or an increase in costs in any litigation or pre-litigation effort to secure such recoveries.

226.     Any tortious interference by Deb Group with Ecolab's prospective economic advantage from Ecolab's right to enforce the Deb Group Patents would substantially impair Ecolab's ability to secure royalties and/or damages from the Ethanol-Isopropanol Sanitizer Companies, and such impairment would greatly exceed $75,000. Such impairment could include a reduction in the amount of royalties and/or damages Ecolab is able to secure, or an increase in costs in any litigation or pre-litigation effort to secure such recoveries.

227.     Any breach of the duty of good faith and fair dealing by Deb Group in a manner that impairs Ecolab's right to enforce the Deb Group Patents would substantially impact Ecolab's ability to secure royalties and/or damages from the Ethanol-Isopropanol Sanitizer Companies, and such impairment would greatly exceed $75,000. Such impairment could include

a reduction in the amount of royalties and/or damages Ecolab is able to secure, or an increase in costs in any litigation or pre-litigation effort to secure such recoveries.

## COUNT I – DECLARATORY JUDGMENT
### (Ecolab Has the Right to Enforce the Deb Group Patents After September 29, 2024)

228.    Ecolab re-alleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

229.    Ecolab and Deb Group are parties to a valid, binding contract embodied in the License Agreement and License Amendment.

230.    Ecolab has performed and continues to perform all of its obligations under the License Agreement and License Amendment.

231.    The License Agreement and License Amendment are each governed by Delaware law.

232.    Section 4.1 of the License Agreement provides in part that: "Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers . . . ." D.I. 2, Exh. A (Section 4.1).

233.    Section 4.1(a) of the License Amendment provides in part that "an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement shall be deemed an election by Deb Group not to enforce its patents pursuant to this Section 4.1." D.I. 2, Exh. C (Section 1.5).

234.    In Section 6 of the Settlement Agreement, Deb Group provided to Ecolab the following confirmation: "Enforcement Confirmation. Deb Group confirms it will not seek to enforce the DEB GROUP Patents in the United States, nor collect royalties thereon, for activities

carried out in the United States by Deb Group licensees on and after September 30, 2024." D.I. 2, Exh. B (Section 6) (emphasis in original).

235.    Section 6 of the Settlement Agreement constituted "an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement," and therefore constituted notice under Section 4.1 of the License Agreement (as amended), of an election by Deb Group not to enforce the Deb Group Patents in the United States against Deb Group licensees on and after September 30, 2024. D.I. 2, Exh. A (Section 4.1) & Exh. C (Section 1.5).

236.    In the SCJP-Ecolab letter of December 1, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, Deb Group communicated its position that "all claims of the '111 patent and '758 patent[s] . . . are subject to an invalidity challenge due to obviousness type double patenting beyond September 29, 2024." D.I. 2, Exh. J (page 1 only), Exh. I & Exh. F.

237.    The SCJP-Ecolab letter of December 1, which incorporated by reference the Nisbet-Farney letter of November 30, and incorporated by reference the Nisbet-Farney letter of August 24, constituted "an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement," and therefore constituted notice under Section 4.1 of the License Agreement (as amended) of an election by Deb Group not to enforce the '111 patent and the '758 patent in the United States on and after September 30, 2024 against any third party. D.I. 2, Exh. J (page 1 only), Exh. I, Exh. A (Section 4.1) & Exh. C (Section 1.5).

238.    Deb Group's MTD Brief included an unequivocal affirmative written communication by Deb Group that after September 29, 2024, it has elected to not enforce the

Deb Group Patents against any third party. As just one example of such confirmation, in contending that Ecolab did not have a "good-faith basis to enforce [the Deb Group] patents," Deb Group next stated: "[n]or does Deb Group, which has recognized that the Deb Group Patents are subject to an invalidity challenge due to obviousness-type double patenting after September 29, 2024." D.I. 21, pp. 19–20.

239.    Deb Group's MTD Brief is sufficient, on its own, to entitle Ecolab to its rights to enforce the Deb Group Patents as set forth in Section 4.1 (as amended).

240.    Deb Group has elected to not enforce the Deb Group Patents on and after September 30, 2024, and therefore Ecolab has the right to enforce the Deb Group Patents in the United States on and after September 30, 2024 pursuant to Section 4.1 (as amended).

241.    Deb Group, however, has maintained that Ecolab does not have the right to enforce the Deb Group Patents on and after September 30, 2024.

242.    Therefore, a present, genuine, and justiciable controversy exists between Plaintiffs and Defendants concerning, *inter alia*, whether Ecolab has the right to enforce the Deb Group Patents in the United States on and after September 30, 2024 pursuant to Section 4.1 of the License Agreement (as amended).

243.    Ecolab is entitled to a declaratory judgment that Ecolab has had, since the time of Deb Group's first affirmative written communication of an election not to enforce, the right to enforce the Deb Group Patents on and after September 30, 2024, and such other damages and equitable relief as it shows itself to be entitled from Deb Group's impairment of that right. Ecolab is entitled to this declaration of its enforcement rights to clarify that it has had such right of enforcement since the time Deb Group provided affirmative written communication of its election not to enforce; to make clear that Ecolab may engage in appropriate pre-enforcement

activity with respect to parties known to be making and selling products covered by at least one valid claim of the Deb Group Patents after September 29, 2024; and, so that Ecolab may reasonably engage in other enforcement activity, inclusive of monitoring the market for additional third parties which may be making and selling products covered by at least one valid claim of the Deb Group Patents after September 29, 2024 and undertaking such enforcement preparations as are reasonable to protect Ecolab's enforcement rights against such third parties.

244.    The rights Ecolab seeks to have declared by this request for relief have value in excess of $75,000 including, but not limited to, the right to enforce claim 29 of the '111 patent against the Ethanol-Isopropanol Sanitizer Companies.

245.    On the bases stated in this Count, Ecolab has pled all elements under Delaware law sufficient to seek the judgment requested.

246.    On the bases stated in this Count, this Count is justiciable and ripe.

247.    On the bases stated in this Count, the amount in controversy under this Count exceeds $75,000.

<u>**COUNT II – BREACH OF CONTRACT**</u>
**(Deb Group's Refusal To Provide Reasonable Cooperation With And/Or Deliberate Interference With Or Diminishment of Ecolab's Enforcement Rights With Respect to the Deb Group Patents Constitutes a Breach of Section 4.1 (As Amended))**

248.    Ecolab re-alleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

249.    Ecolab and Deb Group are parties to a valid, binding contract embodied in the License Agreement and License Amendment.

250.    Ecolab has performed and continues to perform all of its obligations under the License Agreement and License Amendment.

251. The License Agreement and License Amendment are each governed by Delaware law.

252. Deb Group has elected not to enforce the Deb Group Patents in the United States on and after September 30, 2024, and therefore Ecolab has the right to enforce the Deb Group Patents in the United States on and after September 30, 2024 pursuant to Section 4.1 of the License Agreement (as amended).

253. Section 4.1 of the License Agreement provides that when Ecolab has the right to enforce the Deb Group Patents under Section 4.1, Deb Group is required to "provide all reasonable cooperation . . . in pursuing such actions against such third party infringers." D.I. 2, Exh. A (Section 4.1).

254. Deb Group's obligation to provide reasonable cooperation extends to providing cooperation to Ecolab's pre-litigation enforcement efforts.

255. Deb Group's obligation to cooperate under Section 4.1 of the License Agreement extends to cooperating with Ecolab in its enforcement of the Deb Group Patents against third-party infringers, including such third-party infringers who may, at some point, have been the subject of a license with Deb Group with respect to the Deb Group Patents, where, as here, Deb Group elects to cease enforcing the Deb Group Patents against those third-party infringers, including by not collecting royalties from such third-party infringers.

256. Deb Group has breached its obligation under Section 4.1 of the License Agreement to provide "all reasonable cooperation" by refusing to cooperate at all with Ecolab's enforcement of the Deb Group Patents.

257. Deb Group breached and is in breach of Section 4.1 of the License Agreement by maintaining that "Ecolab has no right, contractual or otherwise, to dictate to SCJP how it handles

the Deb Group Patents, or how it communicates to its licensees about this issue concerning the Deb Group Patents." D.I. 2, Exh. F.

258.    Deb Group has breached it obligation under Section 4.1 of the License Agreement to provide "all reasonable cooperation" by refusing specific requests by Ecolab for cooperation, including not conveying to such third parties Deb Group's incorrect view that all claims of the '111 patent are invalid.

259.    Deb Group breached and is in breach of Section 4.1 of the License Agreement by refusing to agree to "not communicate with any company licensed to the U.S. Deb Group Patents regarding any intentions by SCJP not to enforce one or more of its U.S. Deb Group Patents (or other patents, if relevant) after September 29, 2024." D.I. 2, Exh. E.

260.    On information and belief, Deb Group has breached its obligation under Section 4.1 of the License Agreement to provide "all reasonable cooperation" by taking affirmative steps to communicate with third parties with respect to which Deb Group has elected not to enforce the Deb Group Patents after September 29, 2024, and making statements that impair, diminish, and/or bar Ecolab's enforcement rights with respect to such third parties.

261.    Deb Group breached and is in breach of Section 4.1 of the License Agreement by refusing "to abstain from taking any action that would constitute interference with Ecolab's right to enforce the U.S. Deb Group Patents after [September 29, 2024]." D.I. 2, Exh. E.

262.    On information and belief, Deb Group has communicated with at least the Ethanol-Isopropanol Sanitizer Companies and informed them that, as of September 30, 2024, all of the claims of the Deb Group Patents are invalid, and/or that Deb Group no longer would be enforcing the patents, including by not seeking to collect any further royalties.

263.    On information and belief, such statements by Deb Group likely will give rise to allegations by the Ethanol-Isopropanol Sanitizer Companies that they have additional defenses when Ecolab seeks to enforce claim 29 of the '111 patent, including but not limited to allegations of release, waiver, or estoppel.

264.    Such statements by Deb Group, to the extent they give rise to successful defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and deliberately interfere with, and diminish Ecolab's rights, and breach the terms and the intention of Section 4.1, not least by evidencing a deliberate effort to not only not cooperate in Ecolab's enforcement efforts, but also to directly interfere with and wrongly impede such enforcement efforts.

265.    As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to successful defenses to Ecolab's enforcement of the Deb Group Patents against those third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000.

266.    Such statements by Deb Group, to the extent they give rise to allegations of defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and deliberately interfere with, and diminish Ecolab's rights, at least by increasing enforcement costs, and by diminishing the value of any recovery or potential settlement, and breaching the terms and the intention of Section 4.1, not least by evidencing a deliberate effort to not only not cooperate in Ecolab's enforcement efforts, but also to directly interfere with and wrongly impede such enforcement efforts.

267.    On the bases stated in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to defenses to Ecolab's enforcement of the Deb Group Patents against those third parties which require litigation costs and expense on the part of Ecolab and/or diminishment or impairment of Ecolab's recovery from such third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000. On the bases stated in this Count, the amount in controversy under this Count exceeds $75,000. As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and Deb Group's failure to fulfill its obligation of reasonable cooperation with Ecolab's enforcement efforts have either prevented Ecolab from securing its rights to this value, or given rise to defenses to Ecolab's enforcement of the Deb Group Patents against those third parties which require litigation costs and expense on the part of Ecolab and/or diminish or impair Ecolab's recovery from such third parties, where the damage from such failure to reasonably cooperate by Deb Group will substantially exceed $75,000.

268.    On the bases stated in this Complaint, Ecolab has pled all elements under Delaware law sufficient to adequately plead entitlement to relief under this Count.

269.    On the bases stated in this Count, this Count is justiciable and ripe.

270.    On the basis stated in this Complaint, the amount in controversy under this Count exceeds $75,000.

271.    Ecolab has been and continues to be damaged by Deb Group's breach of its obligation to provide reasonable cooperation pursuant to Section 4.1 of the License Agreement, in an amount to be determined at trial.

272. Ecolab is entitled to an injunction requiring that Deb Group provide reasonable cooperation with the rights Ecolab has under Section 4.1 of the License Agreement (as amended) to enforce the Deb Group Patents on and after September 30, 2024, on such bases and with such scope as Ecolab proves itself to be entitled at trial.

273. Ecolab is entitled to an injunction requiring Deb Group to abstain from communicating to any third party against whom Ecolab has the right to enforce the Deb Group Patents after September 29, 2024, inclusive of the Deb Group licensees, in any manner which would impair, impede, or damage Ecolab's enforcement rights with respect to such third parties.

274. Ecolab is entitled to an injunction requiring Deb Group to abstain from communicating to any third party against whom Ecolab has the right to enforce the Deb Group Patents after September 29, 2024, inclusive of the Deb Group licensees, that no claim of the Deb Group Patents is enforceable after September 29, 2024.

275. Deb Group, by refusing to reasonably cooperate with Ecolab in Ecolab's enforcement of the Deb Group Patents after September 29, 2024, inclusive of reasonable cooperation with pre-litigation activities related to Ecolab's enforcement, has breached the License Agreement, and damaged Ecolab, for which Ecolab is entitled to such damages and equitable relief with respect to that breach as it shows itself to be entitled at trial.

276. To the extent that Deb Group, in contravention of Ecolab's enforcements rights under Section 4.1, and/or in contravention of Ecolab's reasonable instructions to Deb Group not to communicate with any third party against whom Ecolab has the right to enforce the Deb Group Patents after September 29, 2024, inclusive of the Deb Group licensees, has communicated to such third parties that Deb Group does not intend to enforce the Deb Group Patents, whether by communicating to such third party that Deb Group will no longer enforce the

license, or that Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, then Deb Group has breached the License Agreement on that basis, and Ecolab is entitled to such damages and equitable relief with respect to that breach as it shows itself to be entitled at trial.

<div align="center">

**COUNT III – TORTIOUS INTERFERENCE WITH**
**PROSPECTIVE ECONOMIC ADVANTAGE**
**(Deb Group's Deliberate Interference with Ecolab's Enforcement of the**
**Deb Group Patents Constitutes a Tortious Interference With The**
**Prospective Economic Advantage To Which Ecolab Is Entitled Under**
**Section 4.1, and Entitles Ecolab To Appropriate Legal and Equitable Relief)**

</div>

277.    Ecolab re-alleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

278.    As alleged in this Complaint, Deb Group has elected not to enforce the Deb Group Patents in the United States after September 29, 2024.

279.    Deb Group's election not to enforce the Deb Group Patents after September 29, 2024 vested in Ecolab the right to enforce the Deb Group Patents, giving Ecolab a reasonable probability of a business opportunity in the enforcement of the Deb Group Patents.

280.    Ecolab had, and has, a reasonable probability of a business opportunity in the form of, at least, securing royalty payments and/or recoveries from the Ethanol-Isopropanol Sanitizer Companies through its enforcement of the Deb Group Patents against at least these third parties.

281.    On information and belief, the Ethanol-Isopropanol Sanitizer Companies will continue to make and/or sell products in the United States that infringe at least one valid claim of the Deb Group Patents after September 29, 2024, and Deb Group has elected after that date not

to enforce the Deb Group Patents against these third parties, including by collecting any royalties therefrom, after that date.

282.     On information and belief, sales of such products in the United States by at least the Ethanol-Isopropanol Sanitizer Companies present a business opportunity for Ecolab to enforce the Deb Group Patents against these third parties.

283.     On information and belief, Deb Group has communicated with at least the Ethanol-Isopropanol Sanitizer Companies and informed them that, as of September 30, 2024, all of the claims of the Deb Group Patents are invalid or unenforceable, and/or that Deb Group has elected after that date not to enforce the Deb Group Patents, including by collecting any royalties after that date.

284.     On information and belief, such statements by Deb Group can be alleged by the Ethanol-Isopropanol Sanitizer Companies to provide the bases for additional defenses when Ecolab seeks to enforce claim 29 of the '111 patent, including but not limited to allegations of release, waiver, or estoppel, and represent intentional interference by Deb Group with Ecolab's enforcement right.

285.     Such statements by Deb Group damage Ecolab's reasonable probability of securing royalty payments from at least the Ethanol-Isopropanol Sanitizer Companies through Ecolab's enforcement of the Deb Group Patents against at least these parties, at least by increasing enforcement costs, and/or by diminishing the value of any recovery or potential settlement, and represent intentional interference by Deb Group with Ecolab's enforcement right.

286.     By notifying the Ethanol-Isopropanol Sanitizer Companies that after September 29, 2024, Deb Group would no longer be enforcing the Deb Group Patents against them, whether by communicating to such third party that Deb Group will no longer enforce the license, or that

Deb Group will affirmatively forego any royalties, or that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable, or by any other similar communication, Deb Group intentionally interfered with Ecolab's business opportunities with at least these third parties.

287.    Deb Group's actions of informing the Ethanol-Isopropanol Sanitizer Companies that after September 29, 2024, Deb Group would no longer be enforcing the Deb Group Patents against them, including by not collecting any royalties thereon, are the proximate cause of Ecolab's loss of the reasonable probability of the business opportunity including, for example, the loss and/or diminishment of royalties and/or recoveries for sales from September 30, 2024 until the expiration of the '111 patent on January 25, 2030.

288.    Deb Group's tortious interference has caused damages to Ecolab in the form of the loss and/or diminishment of royalties and/or recoveries from the Ethanol-Isopropanol Sanitizer Companies from September 30, 2024 to the expiration of the '111 patent on January 25, 2030 in an amount in well in excess of $75,000, including increases in Ecolab's expenses in carrying out its enforcement efforts and/or reduction in the net amount of royalties and/or recoveries to be obtained by Ecolab.

289.    Deb Group's conduct of informing the Ethanol-Isopropanol Sanitizer Companies that after September 29, 2024, Deb Group would no longer be enforcing the Deb Group Patents against them, including not collecting any royalties thereon, was wrongful.

290.    On information and belief, Deb Group provided this notice to at least one or more of the Ethanol-Isopropanol Sanitizer Companies with the knowledge and intention that such notification to these third parties would prevent Ecolab from enforcing the Deb Group Patents against such third party or make such enforcement more difficult and less fruitful, and the nature

of Deb Group's conduct was improper, and carried out with a motive of depriving Ecolab of its interests in its enforcement benefits to which it was entitled under the License Agreement.

291.    Deb Group's notification to the Ethanol-Isopropanol Sanitizer Companies of Deb Group's election not to enforce the Deb Group Patents against these third parties, including by not collecting royalties from them after September 29, 2024, were known, or should have been known by Deb Group to prevent Ecolab from enforcing the Deb Group Patents against such parties or make such enforcement more difficult and less fruitful. As such, Deb Group's motives for such communications were wrongful.

292.    Deb Group's conduct has and will continue to directly interfere with Ecolab's ability to enforce the Deb Group Patents against such third parties, despite that the License Agreement granted Ecolab such enforcement rights. As a party to the License Agreement in which Deb Group granted rights of enforcement to Ecolab, Deb Group's attempt to prevent Ecolab from enjoying the benefit of the License Agreement was wrongful and in bad faith.

293.    Deb Group's notification to the Ethanol-Isopropanol Sanitizer Companies that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable after September 29, 2024, and/or of Deb Group's election not to enforce the Deb Group Patents against these third parties, including by not collecting royalties from them after September 29, 2024, to the extent they give rise to successful defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and tortiously and wrongfully interfere with, and diminish Ecolab's enforcement rights.

294.    As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to successful defenses to Ecolab's

enforcement of the Deb Group Patents against those third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000.

295.    Deb Group's notification to at least the Ethanol-Isopropanol Sanitizer Companies that Deb Group considers all claims of the Deb Group Patents to be invalid or unenforceable after September 29, 2024, and/or of Deb Group's election not to enforce the Deb Group Patents against these third parties, including by not collecting royalties from them after September 29, 2024, to the extent they give rise to allegations of defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and tortiously and wrongfully interfere with, and diminish Ecolab's enforcement rights.

296.    As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to defenses to Ecolab's enforcement of the Deb Group Patents against those third parties which require litigation costs and expense on the part of Ecolab and/or diminishment or impairment of Ecolab's recovery from such third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000.

297.    On the bases stated in this Count, Ecolab has pled all elements under Delaware law sufficient to seek the judgment requested.

298.    On the bases stated in this Count, this Count is justiciable and ripe.

299.    On the bases stated in this Count, the amount in controversy under this Count exceeds $75,000.

## COUNT IV – BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
**(Deb Group's Deliberate Interference With, and Refusal to Cooperate With,
Ecolab's Enforcement of the Deb Group Patents Constitutes
a Breach of the Duty of Good Faith and Fair Dealing)**

300.    Ecolab re-alleges and incorporates the allegations of the preceding paragraphs as if fully set forth herein.

301.    Deb Group has elected not to enforce the Deb Group Patents in the United States on and after September 30, 2024, and therefore Ecolab has the right to enforce the Deb Group Patents in the United States on and after September 30, 2024 pursuant to Section 4.1 of the License Agreement (as amended).

302.    Section 4.1 of the License Agreement provides that when Ecolab has the right to enforce the Deb Group Patents under Section 4.1, Deb Group is required to "provide all reasonable cooperation . . . in pursuing such actions against such third party infringers." D.I. 2, Exh. A (Section 4.1).

303.    The grant by Deb Group to Ecolab of certain enforcement rights as set forth in Section 4.1 (as amended), includes an implied covenant on the part of Deb Group not to interfere with, impair or diminish Ecolab's enforcement rights, including an obligation on Deb Group not to communicate with third parties with respect to which Ecolab has enforcement rights in a manner that interferes with, impairs or diminishes Ecolab's enforcement rights.

304.    On information and belief, Deb Group has communicated with at least the Ethanol-Isopropanol Sanitizer Companies and informed them that, as of September 30, 2024, all of the claims of the Deb Group Patents are invalid or unenforceable, and/or that Deb Group no longer would be enforcing the patents, including by not seeking to collect any further royalties.

305.    On information and belief, such statements by Deb Group likely will give rise to allegations by the Ethanol-Isopropanol Sanitizer Companies that they have additional defenses

when Ecolab seeks to enforce claim 29 of the '111 patent, including but not limited to allegations of release, waiver, or estoppel.

306.    Such statements by Deb Group, to the extent they give rise to successful defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and deliberately interfere with, and diminish Ecolab's rights, and breach the terms and the intention of Section 4.1 of the License Agreement, not least by evidencing a deliberate effort to not only not cooperate in Ecolab's enforcement efforts, but also to directly interfere with and wrongly impede such enforcement efforts.

307.    As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to successful defenses to Ecolab's enforcement of the Deb Group Patents against those third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000.

308.    Such statements by Deb Group, to the extent they give rise to allegations of defenses to Ecolab's enforcement of the Deb Group Patents, clearly and directly damage Ecolab's rights, and deliberately interfere with, and diminish Ecolab's rights, at least by increasing enforcement costs, and by diminishing the value of any recovery or potential settlement, and breaching the terms and the intention of Section 4.1 of the License Agreement, not least by evidencing a deliberate effort to not only not cooperate in Ecolab's enforcement efforts, but also to directly interfere with and wrongly impede such enforcement efforts.

309.    As pled elsewhere in this Complaint, Ecolab's enforcement rights with respect to at least the Ethanol-Isopropanol Sanitizer Companies have a value well in excess of $5,000,000, and to the extent improper statements by Deb Group give rise to defenses to Ecolab's

enforcement of the Deb Group Patents against those third parties which require litigation costs and expense on the part of Ecolab and/or diminishment or impairment of Ecolab's recovery from such third parties, Ecolab's damages from such misconduct by Deb Group will substantially exceed $75,000.

310.    Deb Group's communications with at least the Ethanol-Isopropanol Sanitizer Companies informing them that, as of September 30, 2024, all of the claims of the Deb Group Patents are invalid or unenforceable, and/or that Deb Group no longer would be enforcing the patents, including by not seeking to collect any further royalties, constitutes a breach by Deb Group of its duty of good faith and fair dealing by breaching the implied covenant that Deb Group will not interfere with, impair or diminish Ecolab's enforcement rights, including an obligation on Deb Group not to communicate with third parties with respect to which Ecolab has enforcement rights in a manner that interferes with, impairs or diminishes Ecolab's enforcement rights.

311.    Under Delaware law, Deb Group had a duty of good faith and fair dealing to act in a manner consistent with the reasonable expectations of the parties in connection with the License Agreement (as amended). Deb Group's communications to third parties with respect to whom Ecolab has enforcement rights after September 29, 2024, breach that duty.

312.    Here, Deb Group has breached that duty of good faith and fair dealing by engaging in conduct that was inconsistent with the reasonable expectations of the parties under the License Agreement (as amended), including by taking actions that frustrate the purpose of the contracts, and/or impair Ecolab's rights under the contract.

313.    The aforementioned communications by Deb Group with third parties against whom Ecolab has the right to enforce the Deb Group Patents after September 29, 2024, were

arbitrary and unreasonable, and prevent Ecolab from enjoying the fruits of the bargain to which it is entitled under the License Agreement, amounting to a breach by Deb Group of the duty of good faith and fair dealing.

314.    Deb Group, including by the aforementioned communications with third parties against whom Ecolab has the right to enforce the Deb Group Patents after September 29, 2024, has obstructed, undermined, and/or worked in opposition to Ecolab's ability to fulfill, or profit from, the enforcement rights to which Ecolab is entitled under the contract. As a consequence, Deb Group has breached its duty of good faith and fair dealing.

315.    On the bases stated in this Count, Ecolab has pled all elements under Delaware law sufficient to seek the judgment requested.

316.    On the bases stated in this Count, this Count is justiciable and ripe.

317.    On the bases stated in this Count, the amount in controversy under this Count exceeds $75,000.00.

318.    Awarding Ecolab the relief it seeks under this Count would ensure an equitable outcome consistent with the reasonable expectations of the parties with respect to the rights they intended to be conveyed under Section 4.1 of the License Agreement (as amended).

## JURY TRIAL DEMANDED

Ecolab hereby requests a trial by jury pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

WHEREFORE, Ecolab respectfully requests that this Court enter a Judgment and Order in its favor and against Defendants as follows:

A.    A Declaration that Ecolab has the right to enforce the Deb Group Patents in the United States on and after September 30, 2024, inclusive of the right to engage in pre-litigation activity on or after Deb Group's election not to enforce, on the bases set forth in Count I;

B.   A Judgment that Deb Group breached Section 4.1 of the License Agreement on the bases set forth in Count II;

C.   A Judgment that Deb Group tortiously interfered with Ecolab's enforcement rights under Section 4.1 of the License Agreement (as amended) on the bases set forth in Count III;

D.   A Judgment that Deb Group breached its duty of good faith and fair dealing by deliberately interfering with, and refusing to cooperate with, Ecolab's enforcement of the Deb Group Patents on the bases set forth in Count IV;

E.   An Award of such damages as Ecolab shows itself to be entitled at trial for Deb Group's breaches of Section 4.1 of the License Agreement on the bases set forth in Count II;

F.   An Award of such damages as Ecolab shows itself to be entitled at trial for Deb Group's tortious interference with Ecolab's enforcement rights under Section 4.1 of the License Agreement (as amended) on the bases set forth in Count III;

G.   An Award of such damages as Ecolab shows itself to be entitled at trial for Deb Group's breach of its duty of good faith and fair dealing by deliberately interfering with, and refusing to cooperate with, Ecolab's enforcement of the Deb Group Patents on the bases set forth in Count IV;

H.   An Injunction enjoining Deb Group to comply with its obligation to provide reasonable cooperation with Ecolab's enforcement of the Deb Group Patents, and enjoining Deb Group from interfering with Ecolab's enforcement rights with respect to the Deb Group Patents;

I.   Such other exemplary damages or other relief to which Ecolab establishes it is entitled;

J.   Awarding Ecolab its costs and expenses in this action; and

K.   Awarding such other and further relief as this Court deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

W. Bryan Farney
Cassandra Klingman
Caryn Cross
Jennifer Towle
Farney PC
1008 S. Main Street
Georgetown, TX 78626
(512) 582-2810

By:  */s/ Jonathan A. Choa*
    Jonathan A. Choa (#5319)
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    jchoa@potteranderson.com

*Attorneys for Plaintiffs Ecolab Inc. and Ecolab USA Inc.*

Dated: June 8, 2023