## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ECOLAB INC. AND ECOLAB USA INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-00170-RGA |
| | ) | |
| SC JOHNSON PROFESSIONAL GROUP | ) | **JURY TRIAL DEMANDED** |
| LIMITED (F/K/A DEB GROUP LIMITED) | ) | |
| AND DEB IP LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

OF COUNSEL:

W. Bryan Farney
Cassandra Klingman
Caryn Cross
Jennifer Towle
Farney PC
1008 S. Main Street
Georgetown, TX 78626
(512) 582-2810

Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
P.O. Box 951
Wilmington, DE 19899
(302) 984-6100
jchoa@potteranderson.com

*Attorneys for Plaintiffs Ecolab Inc. and
Ecolab USA, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................... 1

LEGAL STANDARDS .......................................................................................... 3

ARGUMENT .......................................................................................................... 3

I.   Count I Adequately Pleads That Ecolab Is Entitled To A Declaratory Judgment That Ecolab Has The Right To Enforce The Deb Patents After Sept. 29, 2024 .......................... 3

    A.   The Only Argument Made By Deb With Respect To The Dec. 1 Letter Fails, And That Letter Alone Suffices To Plead Ecolab's Count I ...................................... 4

    B.   Ecolab Has Also Adequately Alleged That Section 6, And Deb's First MTD, Each Satisfy The Notice Requirements of Sections 4.1 & 4.1(a), And Support Count I ............................................................................................................... 4

        1.   Deb's First MTD Is Adequately Alleged To Constitute Notice of Election........ 4

        2.   Section 6 Is Adequately Alleged To Be Notice Under Sections 4.1 & 4.1(a) ..... 5

            a)   *Ecolab Did Not Agree Section 6 Is Not Notice Under Section 4.1, As Drafts Exchanged Are Non-Binding And Cannot Constitute Notice* ........... 5

            b)   *Section 4.1(a) Does Not Require The Notice Of Election Include Reference To "Section 4.1," "Election," Or That It "Identify A Particular Infringer"* ................................................................................ 6

            c)   *Section 6 Is Notice Of An Election Even Though It Refers To "Licensees"* .............................................................................................. 7

            d)   *Deb Provided Section 6 To The "Ecolab Counsel Identified In Section 7"* .............................................................................................. 9

            e)   *While Deb Has "Sole Discretion" To Make An Election, Once It Elects, And Provides Notice, It Has No Discretion To Bar Ecolab's Enforcement Rights* ................................................................................ 10

            f)   *Ecolab Did Not Agree That Section 6 Failed To Qualify As Notice* .......... 11

II.   Count II Is Sufficiently Pled As To Deb's Refusal To Cooperate ..................................... 11

    A.   Deb Makes The Same Arguments Against Count II As It Did Count I, And They Fail For The Same Reasons ............................................................................. 11

i

B.   Other Arguments That Count II Is Not Ripe, Or Fails To Plead Breach, Also Fail ................................................................................................. 12

1.   Allegations Of Likely Sales After Sept. 29, 2024 Are Not Speculative ............ 12

2.   Ecolab Was Not Required To Name Company A & Company B ..................... 13

3.   Ecolab Did Allege Breach By Alleging Deb's Refusal To Cooperate At All ... 13

4.   Deb's Contention That Cooperation Is Sanctionable Is Wrong, And Illustrates Deb's Disregard That Ecolab's Allegations Must Be Accepted As True ........................................................................................................ 14

5.   Deb's Cooperation Is Required Pre-Litigation .................................................. 15

C.   Count II Adequately Alleges A Basis For Relief ....................................................... 15

III.   Deb's Improper Communications With Third Parties Are Sufficiently Pled As Part Of Count II, Or As The Basis Of Counts III Or IV ............................................................ 16

A.   Count II Adequately Pleads Express Breach By Deb's Wrongful Communications ......................................................................................................... 16

B.   If Count II Did Not Expressly Bar Deb's Communications, It Does So Impliedly ..................................................................................................................... 17

C.   If Deb's Communications Do Not Breach An Express Or Implied Duty, Then They Represent Tortious Interference With Ecolab's Enforcement Rights ............. 18

1.   Ecolab's Tortious Interference Claim Is Sufficiently Alleged .......................... 18

2.   Count III Is Not Impermissibly Bootstrapped .................................................. 18

D.   Ecolab Adequately Pled Harm From Deb's Wrongful Communications ................ 20

IV.   Dismissal With Prejudice Would Be Improper ................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilent Techs., Inc. v. Kirkland*,
  2009 Del. Ch. LEXIS 11 (Del. Ch. Jan. 20, 2009) ..........................................................13, 14

*Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust*,
  2018 Del. Super. LEXIS 267 (Del. Super. Jun. 21, 2018)................................................18, 19

*Axogen Corp. v. Integra LifeSciences Corp.*,
  2021 Del. Super. LEXIS 704 (Super. Ct. Dec. 13, 2021).......................................................12

*Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*,
  2009 Del. Ch. LEXIS 54 (Del. Ch. Apr. 20, 2009) ..............................................................17

*Cornell Glasgow, LLC v. La Grange Properties LLC*,
  2012 Del. Super. LEXIS 266 (Super. Ct. June 6, 2012)........................................................20

*CrewFacilities.com, LLC v. HotelEngine, Inc.*,
  2021 U.S. Dist. LEXIS 119769 (D. Del. June 28, 2021) (J. Andrews) ................................19

*Data Mgmt. Internationale v. Saraga*,
  2007 Del. Super. LEXIS 412 (Super. Ct. Jul. 25, 2007)...................................................18, 19

*Ecolab Inc. v. SC Johnson Prof'l Grp. Ltd.*,
  No. 21-720-RGA, 2022 U.S. Dist. LEXIS 78867 (D. Del. Apr. 18, 2022)................2, 3, 8, 15

*Organovo Holdings, Inc. v. Dimitrov*,
  162 A.3d 102 (Del. Del. Ch. 2017).......................................................................................13

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d. Cir. 2008)................................................................................................20

*Quigley Corp. v. Wachovia Ins. Servs.*,
  2007 U.S. Dist. LEXIS 49955 (E.D. Pa. July 6, 2007)..........................................................15

*Samsung Elecs. Co. v. Netlist, Inc.*,
  2022 U.S. Dist. LEXIS 135916 (D. Del. Aug. 1, 2022) (J. Andrews)........................7, 8, 9, 15

*Sofregen Med. Inc. v. Allergan Sales, Ltd. Liab. Co.*,
  2021 Del. Super. LEXIS 319 ..........................................................................................17, 19

*Sprint Communs. Co. L.P. v. Cequel Communs., LLC*,
  2022 U.S. Dist. LEXIS 14903 (D. Del. Jan. 27, 2022) (J. Andrews) ...................................4, 5

*Talley v. Christiana Care Health Sys.*,
    2019 U.S. Dist. LEXIS 25881 (D. Del. Feb. 19, 2019) ........................................................19

*Vintage Rodeo Parent, LLC v. Rent-a-Car, Inc.*,
    2019 Del. Ch. LEXIS 87 (Del. Ch. Mar. 14, 2019) ...................................................6, 7, 9, 10

*White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*,
    2022 U.S. Dist. LEXIS 194629 (D. Del. May 5, 2022) .........................................................6

**Other Authorities**

D. Del. LR. 7.1.3(c)(2) ...........................................................................................................4, 5, 15

*Elect.* Merriam-Webster's Collegiate Dictionary (11th ed. 2020) ..............................................4

Fed. R. Civ. P. 8(d) ..................................................................................................................17, 19

Fed. R. Civ. P. 11(b)(4) .................................................................................................................13

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... *passim*

## INTRODUCTION

Plaintiffs Ecolab Inc. and Ecolab USA Inc. (collectively, "Ecolab") respectfully submit this brief in opposition to Defendants' (collectively "Deb") Motion to Dismiss Ecolab's First Amended Complaint ("D.I. 31" referred to herein as "FAC") under Fed. R. Civ. P. 12(b)(6).

The FAC sufficiently pleads a straightforward case. Ecolab and Deb have a contract that, in Sections 4.1 & 4.1(a), gives Ecolab the right to enforce certain Deb patents when Deb elects not to do so, and informs Ecolab. FAC ¶¶ 17-27; 105-06. Deb is required to reasonably cooperate with Ecolab's enforcement. *Id*. at ¶ 27. Deb does not dispute these contract provisions exist.

The FAC then alleges that Deb has made an election not to enforce, and communicated that election to Ecolab on at least three separate occasions:

1. Settlement Agreement, Section 6: "Deb Group confirms it will not seek to enforce the Deb Patents … after Sept. 29, 2024." FAC ¶¶ 101-15; 146-60; 232-35; 240.

2. Dec. 1 Letter: "[Deb] has … concluded that all [claims of the Deb Patents] are subject to an invalidity challenge …beyond Sept. 29, 2024." FAC ¶¶ 116-37; 161-66; 236-37; 240.

3. Deb's First Motion to Dismiss ("MTD"): Neither Ecolab nor Deb can assert the Deb Patents after Sept. 29, 2024, because "Deb Group … has recognized that the Deb Patents are subject to an invalidity challenge … after Sept. 29, 2024." FAC ¶¶ 138-45; 238-39; 240.

Despite these clear statements, Deb, remarkably, denies having made an election not to enforce, denies sending Ecolab notice of its election, and denies Ecolab now has the enforcement rights. Count I seeks a declaration that Ecolab does have those enforcement rights. It is adequately pled.

Ecolab also alleges that Deb refused to provide the reasonable cooperation required by Section 4.1. For this breach, Count II seeks injunctive and other relief. FAC, Count II.

Finally, the FAC alleges Deb has communicated with third parties in a way that damages and impairs Ecolab. FAC, Sec. O. Ecolab alleges first this conduct should be considered an express breach of Deb's duty to cooperate in Section 4.1, if the contract is properly interpreted, and a basis for Count II which pleads breach of express contract. However, Deb denies Section

4.1 expressly prohibits such third party communications (D.I. 33 at 16), and so Ecolab alleges in

Count IV that such conduct would at least breach an implied duty of the contract. Deb also

denies Section 4.1 even implies such a duty (D.I. 33 at 20), and so Ecolab alleges in Count III

that such conduct, if not expressly or impliedly prohibited by the contract, at least constitutes a

tortious interference with Ecolab's rights.

Rule 12(b)(6) dismissals must clear a high bar – a finding that even if one accepts all of

the factual allegations in the FAC to be true, and accepts all contract interpretations not

manifestly unreasonable, Ecolab has failed to state a claim. *See Ecolab Inc. v. SC Johnson Prof'l*

*Grp. Ltd.*, No. 21-720-RGA, 2022 U.S. Dist. LEXIS 78867, at *6 (D. Del. Apr. 18, 2022)

(denying Deb's 12(b)(6) motion in earlier litigation on grounds equally applicable here). Deb's

Brief consistently ignores this standard, beginning with the first two pages, where Deb provides

***its own version*** of the facts and contract interpretations, without citing any support, and wholly

ignores Ecolab's detailed allegations to the contrary.[1] As just one example, Deb simply states,

without citation, that "both parties concluded that [the Deb] patents were not valid" (D.I. 33 at

1), even though Ecolab alleged in detail to the contrary. FAC ¶¶ 47-56.

In short, Ecolab has adequately pled Counts I-IV, and Deb's Motion fails to satisfy Rule

12(b)(6). Indeed, the only unusual thing about this case is that it involves the patent licensee,

Ecolab, insisting a patent claim remains valid and enforceable, while the licensor, Deb, denies it,

and affirmatively acts to prevent enforcement by Ecolab even though that enforcement would

cost Deb nothing. If Deb is correct on invalidity, Ecolab will lose when it asserts claim 29

against others. But Section 4.1 requires Ecolab pay the expenses for such enforcement, including

Deb's expenses, so a failed effort costs Deb nothing. And, if Ecolab is successful in securing

---

[1] Ecolab disagrees with Deb's unsupported assertions and will disprove them in this litigation.
But for purposes of this 12(b)(6) Motion, Deb's allegations are irrelevant. It is Ecolab's
assertions that must be accepted as true. *See* Legal Standards, *infra*.

royalties for infringements, Deb suffers no harm because it has already forsworn such royalties.

## LEGAL STANDARD

A Rule 12(b)(6) motion "may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the [plaintiff], a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Ecolab Inc.,* 2022 U.S. Dist. LEXIS 78867 at *4-5 (and cases cited). In a contract case, the contract is to be read as it "would be understood by an objective, reasonable third party." *Id.* at *6. In the context of a Rule 12(b)(6) motion, if a contract provision is subject to more than one reasonable interpretation, and plaintiff's interpretation is not unreasonable, then at most the contract is ambiguous, and the issue is not properly resolved in a Rule 12(b)(6) motion. *Id.* at *10.

## ARGUMENT

### I.   Count I Adequately Pleads That Ecolab Is Entitled To A Declaratory Judgment That Ecolab Has The Right To Enforce The Deb Patents After Sept. 29, 2024

Count I seeks a declaratory judgment that Ecolab has the right to enforce the Deb Patents (FAC ¶¶ 20-22) after Sept. 29, 2024, where Ecolab pled: (1) Sections 4.1 & 4.1(a) give Ecolab the right to enforce the Deb Patents against third-party infringers when Deb elects not to do so and communicates that election to Ecolab (FAC ¶¶ 26-27; 105-06; 232-33); (2) Deb has elected not to enforce after Sept. 29, 2024 (FAC ¶¶ 107-66); and (3) Deb communicated that election by at least three separate communications: (*i*) Section 6; (*ii*) the Dec. 1 Letter; and (*iii*) Deb's First MTD. FAC, Secs. I-M. Ecolab has also pled it will be damaged if it does not secure the requested relief. FAC, Secs. O-R. Count I pleads a claim and Deb's Motion should be denied.

While Deb makes different arguments as to why each of the three communications should not provide a basis for Count I, and Ecolab addresses each below, it is important to note that Deb makes only one argument with respect to the Dec. 1 Letter. Given that Ecolab need only allege one notice of election by Deb to support Count 1, Ecolab addresses the Dec. 1 Letter first.

**A. The Only Argument Made By Deb With Respect To The Dec. 1 Letter Fails, And That Letter Alone Suffices To Plead Ecolab's Count I**

Deb argues the Dec. 1 Letter is not notice of its election only because, after Deb flatly states in the letter that "all [claims of the Deb Patents] are subject to an invalidity challenge," Deb then adds, self-servingly, that Deb "did not make an election" to not enforce its patents. D.I. 33 at 12-13. But such disingenuous pretense cannot serve to deprive Ecolab of its rights.

The term "elect" simply means "to choose." *Elect.* Merriam-Webster's Collegiate Dictionary (11th ed. 2020). Deb's insistence in the Dec. 1 Letter that its patents cannot be enforced after September 29, 2024, clearly establishes that Deb has ***chosen not to enforce*** its patents after that date. For Deb to then state this "choice" is not an "election," does not make it so. Ecolab has alleged, and clearly is correct, that such a contradictory statement does not give Deb a basis upon which to deny Ecolab's rights. FAC ¶¶ 147;116-37. Deb simply ignores Ecolab's allegations on this point in the FAC at ¶¶ 161-166, where Ecolab alleges that nothing in Sections 4.1 & 4.1(a) require use of the term "election" *in haec verba*. Having not challenged Ecolab's allegations in its Opening Brief, Deb may not do so in Reply. *Sprint Communs. Co. L.P. v. Cequel Communs., LLC*, 2022 U.S. Dist. LEXIS 14903, at *7-8 (D. Del. Jan. 27, 2022) (J. Andrews) (arguments not raised in movant's opening brief are waived); D. Del. LR. 7.1.3(c)(2).

**B. Ecolab Has Also Adequately Alleged That Section 6, And Deb's First MTD, Each Satisfy The Notice Requirements of Sections 4.1 & 4.1(a), And Support Count I**

**1. Deb's First MTD Is Adequately Alleged To Constitute Notice of Election**

Ecolab alleged at FAC ¶¶ 138-145 that Deb's First MTD constitutes an affirmative written communication of its election not to enforce. Deb responds only by claiming, without any explanation, that its First MTD cannot constitute such a communication. D.I. 33 at 13. But, that is all Deb does. It simply says so. Deb makes no attempt to refute the allegations of both fact and contract interpretation Ecolab provided in the FAC at ¶¶ 138-145. As such, Deb's contention

4

that Deb's First MTD cannot support Count I must be ignored, and Deb is barred from making new arguments in reply. *Sprint,* 2022 U.S. Dist. LEXIS at *7-8; D. Del. LR. 7.1.3(c)(2).

It is clear, in any event, that Deb's First MTD does satisfy the notice requirements of Sections 4.1 & 4.1(a). Deb does not deny that its First MTD was sent to the persons cited by Section 4.1(a) as proper recipients. D.I. 33 at 13 n.3. And, in the First MTD, Deb made an unequivocal affirmative written statement that after Sept. 29, 2024, Deb had decided not to enforce the Deb Patents against anyone, just as Ecolab has alleged. FAC ¶ 141.

### 2. Section 6 Is Adequately Alleged To Be Notice Under Sections 4.1 & 4.1(a)

Ecolab has separately alleged that Section 6 was communicated in a manner that satisfied Sections 4.1 & 4.1(a), that it gave notice of Deb's election not to enforce, and that these allegations are sufficient to support Count I. FAC ¶¶ 146-160. Remarkably, Deb fails to even mention these allegations, much less contend they are insufficient to support Count I under Rule 12(b)(6) standards. This alone warrants denial of Deb's Motion.

In seeking to dismiss Count I on the basis that Section 6 cannot qualify as notice, Deb asserts a list of arguments based upon contested contract interpretations and Deb's own version of the facts. While litigating these points is not appropriate at this stage given that Ecolab has adequately pled a claim as to Section 6, Ecolab for completeness addresses Deb's defenses.

#### a) Ecolab Did Not Agree Section 6 Is Not Notice Under Section 4.1, As Drafts Exchanged Are Non-Binding And Cannot Constitute Notice

Deb first insists Section 6 cannot constitute an affirmative written communication of an election because it was included in drafts exchanged between the parties prior to signing the final Agreement, and in Section 4.1(a), Ecolab confirmed "prior to the Amendment Date Ecolab has not received any election by Deb Group to not enforce its patents." D.I. 33 at 8-9. Per Deb, because versions of Section 6 were included in earlier drafts, the quoted language means Ecolab agreed the signed version of Section 6 also does not satisfy Section 4.1(a).

5

But here Deb ignores FAC ¶ 157, where Ecolab correctly alleges that the exchanged drafts including Section 6 were just that – ***drafts***. That is, proposed positions Deb made contingent upon Ecolab accepting the entire proffered draft. Ecolab's allegations in the FAC that drafts cannot be binding communications on behalf of a party are correct. *See, e.g., White Winston Select Asset Funds, LLC v. Good Times Rests., Inc.*, 2022 U.S. Dist. LEXIS 194629, at *1, 8-10 (D. Del. May 5, 2022) (noting that "a preliminary agreement is not the final deal"). Deb's first ***binding*** communication of Section 6 was in the ***signed*** Settlement Agreement, and it is that document that ***first*** provided Deb's notice of election with respect to Section 6.

> ### b)   Section 4.1(a) Does Not Require The Notice Of Election Include Reference To "Section 4.1," "Election," Or That It "Identify A Particular Infringer"

Deb also insists Section 6 cannot satisfy Sections 4.1 & 4.1(a) because it did not recite "Section 4.1," did not use the term "election," and did not identify any particular third-party infringer. D.I. 33 at 11. But these Sections do not require inclusion of such terms. Deb simply ignored Ecolab's allegations on this point. FAC ¶¶ 146-47. Deb's communication need only convey that Deb has chosen (i.e., "elected") not to enforce its patents. Section 6 does this expressly: "Deb Group confirms it will not seek to enforce the Deb Patents in the United States."

Deb cites *Vintage* to argue "Section 4.1," and "election," must be in its notice of election. D.I. at 12. But *Vintage*, a post-trial opinion, turned on whether a party had adequately invoked extending an "End Date" as required by the contract. *Vintage Rodeo Parent, LLC v. Rent-a-Car, Inc*., 2019 Del. Ch. LEXIS 87, at *38-41 (Del. Ch. Mar. 14, 2019). *Vintage* held making the other party aware of conduct inconsistent with expecting a termination was insufficient, under that contract, to establish an explicit request for extension. *Id*. at *2-11. *Vintage* has no relevance here, where Deb sent three separate communications confirming its election. If *Vintage* has any relevance, it is that it rebuts Deb's position that "strict compliance" with notice provisions are necessary where the recipient did in fact receive the notice. *Id.* at *43, n.191-94.

### c) *Section 6 Is Notice Of An Election Even Though It Refers To "Licensees"*

Deb argues Section 6 cannot be an election not to enforce because Deb only confirmed it would not enforce the Deb Patents against its "licensees" after Sept. 29, 2024. Deb now claims that patents cannot be enforced against licensees, despite having claimed the opposite in Section 6 itself, and admitting as much multiple times in its own Brief. As Ecolab alleged in ¶¶ 175-78, in Section 6 Deb literally "confirm[ed] it will not seek to ***enforce*** the Deb Patents … ***for activities*** carried out … ***by Deb Group licensees*** on and after September 30, 2024." As the emphasized words demonstrate, even Deb understands patents can be "enforced" against "licensees."

Indeed, Ecolab alleged several relevant examples where licensees can have patents asserted against them. *See, e.g.,* FAC ¶¶ 179-82. Deb failed to refute these. Ecolab made further allegations in this regard in FAC ¶¶ 185-87 & 193, to which Deb provided no response.

In short, Ecolab alleged in great detail, in FAC ¶¶ 167-93, that when Section 4.1 refers to a right to "enforce [Deb's] patents against [] third party infringers," the election not to enforce can include a refusal to collect royalties against licensees. Deb makes no mention of these allegations, except to claim in a one-sentence footnote, without explanation, that such allegations are "improper." D.I. 33 at 10 n.1. Not only is this scant footnote inadequate to show Ecolab's contract interpretation is manifestly unreasonable, or that Ecolab's factual allegations should be disregarded, but, by making it only in a footnote, Deb has waived the point. *See, e.g., Samsung Elecs. Co. v. Netlist, Inc.*, 2022 U.S. Dist. LEXIS 135916, at *14 (D. Del. Aug. 1, 2022) (J. Andrews) ("[A]rguments raised in passing (such as, in a footnote) … are considered waived.").

Even if one were to consider Deb's waived argument, a review of Ecolab's allegations shows quite clearly Ecolab has pled a claim upon which relief could be granted. Ecolab alleged that Section 4.1 was included to encompass "the parties' intentions ... to permit Ecolab to secure recoveries from third parties making use of the Deb Patents when Deb Group elected not to do

so." FAC ¶ 169. Ecolab also asserted that "[a] right to 'enforce patents' includes the right to collect royalties owed on such patents." FAC ¶ 170. Ecolab further asserted that "[p]ermitting continuing infringement of the Deb Patents without the requirement to pay any commercially reasonable royalty was not contemplated by the parties in Section 4.1 to be 'enforce[ment]' of the patents." FAC ¶ 172. Deb did not respond to any of these allegations, much less show why they are manifestly unreasonable interpretations of the contract.

In addition, Ecolab alleged that "the phrase 'third party infringer' as used in Section 4.1" was intended by the parties, to mean "any company . . . who . . . sells a product covered by at least one valid claim of the Deb Patents, and against whom Deb Group is not enforcing the Deb Patents, including by affirmatively foregoing any royalties for such . . . sale." FAC ¶ 173. Ecolab asserted that such an interpretation is consistent with the parties' intentions, consistent with how an objective reasonable third party would understand Section 4.1, is a reasonable interpretation, and ensured Ecolab the benefit of its bargain. *Id*. *See also* FAC ¶ 174. Here again, Deb failed to even mention FAC ¶¶ 173-74, and may not dispute these allegations in its reply brief.

Deb argues "third party infringer" cannot include "licensees" because the term "licensee" is used in Section 7. D.I. 33 at 10. But Section 7 is a provision directed to providing a most-favored royalty rate, and can relate only to third party users of Deb Patents who have licenses. In contrast, Section 4.1 speaks to patent ***enforcement***, and as Deb itself has recognized, patents can be enforced, even as against licensees. FAC ¶¶ 176-77. *See also* Section 6.

Finally, Deb also failed to respond to FAC ¶ 184, which alleges Ecolab's interpretation is not only reasonable, but correct, because Delaware law does not support a construction that would render provisions illusory or meaningless. *Ecolab Inc*., 2022 U.S. Dist. LEXIS 78867 at *13, n.62. Here, Deb's interpretation of Section 4.1 would do just that. It would mean Deb easily could evade Ecolab's enforcement rights with respect to a third party against whom Deb does not wish to

8

enforce its patents. Under Deb's interpretation, Deb could enter into a license with a stated royalty rate with a third-party infringer, then simply inform the infringer that Deb will make no effort to collect any royalties. This Potemkin license, per Deb, would deprive Ecolab of its enforcement rights as to that party, because it now would be a "licensee" rather than a "third party infringer." Such a position would render Section 4.1 illusory and meaningless. Further, it would breach Deb's obligation, *when* it elects to enforce, to engage in enforcement that is commercially reasonable under Section 4.1. The parties would not have intended such a meaning for Section 4.1, where, by a trivial work-around, Deb could deprive Ecolab of its bargained-for enforcement rights. Deb did not address FAC ¶ 184 and cannot raise this issue in Reply.

### d)   Deb Provided Section 6 To The "Ecolab Counsel Identified In Section 7"

Deb argues Section 6 was not communicated as required by Section 4.1(a). D.I. 33 at 10-11. But Deb misreads Section 4.1(a), which does not require communication *by the means* set forth in Section 7, but only *to the persons identified* in Section 7, namely, Ecolab's Chief I.P. Counsel, James Smith, and outside counsel, Bryan Farney. FAC ¶¶ 107-08. Thus, Deb's citations at pp.10-11 to *Aluminum*, *PR*, and *Vintage*, which relate to manner of service, are not relevant. Here, Deb sent the signed Agreement directly to Mr. Farney, knowing and intending that, as outside counsel, he would provide it to Mr. Smith. FAC ¶¶ 101-15. This is sufficient.

Ecolab also alleged that, even if direct delivery to Mr. Smith was required by Section 4.1(a), Deb's means of delivery sufficed because Deb previously used the same informal delivery means, and Ecolab had accepted it. FAC ¶¶ 110-15. Deb's only response was a footnote calling these allegations "improper," without explaining the impropriety. D.I. 33 at 11 n.2. This is insufficient. *Samsung*, 2022 U.S. Dist. LEXIS 135916 at *14. Deb suggests a requirement in the prior correspondence for a "waiver," but fails to explain or provide any support. Further, Deb's allegation that a "waiver" is required is, once again, Deb simply relying on its own version

9

of the facts in disregard of the standards in Rule 12(b)(6). Ecolab made no such allegation that a waiver is required, and at this stage, it must be assumed that one is not required.

Finally, Deb's position regarding notice also is not supported by its cases. Deb cites *Aluminum, PR*, and *Vintage* for the proposition that strict compliance with notice provisions are necessary. D.I. 33 at 10. But in those cases it was the ***sender,*** as ***plaintiff,*** making a claim requiring proof of notice, and it was the alleged ***recipient,*** as ***defendant,*** who denied notice requirements were followed. Whatever may be the law in that circumstance, it does not apply here. In this case, Ecolab, as the ***recipient,*** alleges ***it did receive the notice*** from Deb, and Deb, as the ***sender*** of the notice, agrees. But, Deb, as sender, cannot be heard, and should be estopped, to rely on its own failure to adhere to any purported notice procedures in order to deny it sent a Section 4.1(a) notice which it admits, and Ecolab agrees, was received by Ecolab.

### e) *While Deb Has "Sole Discretion" To Make An Election, Once It Elects, And Provides Notice, It Has No Discretion To Bar Ecolab's Enforcement Rights*

Deb also insists Section 6 cannot constitute communication of an election not to enforce because Deb has "sole discretion" on whether to make such an election. D.I. 33 at 13-14. But Deb confuses different concepts. Section 4.1(a) does provide Deb "sole discretion" whether to elect not to enforce. And, when Deb makes such an election, Ecolab can only get the benefit from that election when Deb informs Ecolab of the election by an affirmative written communication. However, once Deb chooses not to enforce its patents, and communicates that election to Ecolab, there is nothing left to Deb's discretion. Section 4.1 automatically vests the enforcement right in Ecolab. FAC ¶ 27 ("Ecolab ***shall*** have the right") (emph. added).

If Deb is contending that it can choose not to enforce, then communicate that election to Ecolab, and yet even then have "discretion" whether to give Ecolab the right to enforce by deciding whether to include the word "election" in its communication, Deb simply misreads the contract. Once the two predicate events have occurred – election, and notice – Section 4.1 is

10

mandatory. *Id*. Ecolab alleged this specifically in FAC ¶¶ 154-55. Deb did not even acknowledge this allegation, much less respond to it. Ecolab's reading of the contract on this point manifestly is reasonable, and at this stage must be accepted. Similarly, Deb makes an argument (D.I. 33 at 14) that it can "revoke" any election, but this point is irrelevant, as Deb does not claim it made any such revocation. *See also* FAC ¶¶ 154-56 (notice cannot be revoked).

### f) Ecolab Did Not Agree That Section 6 Failed To Qualify As Notice

Deb argues that in prior correspondence it asserted to Ecolab that Section 6 did not constitute notice, and that Ecolab, in responding, did not deny this (and thereby conceded the point). D.I. 33 at 6-7. But, Deb again ignores Ecolab's allegations directly to the contrary. FAC ¶ 158. There, Ecolab explained that in reply correspondence it disagreed with Deb's position, but deferred addressing it at that time. At no time did Ecolab agree with Deb's position, as Deb well knows. Given Ecolab's allegations in FAC ¶ 158, Deb's argument provides no basis to conclude Ecolab has not at least stated a claim sufficient under Rule 12(b)(6).

## II. Count II Is Sufficiently Pled As To Deb's Refusal To Cooperate

Section 4.1 requires Deb to provide reasonable cooperation with Ecolab's enforcement. FAC ¶ 253. Count II alleges Deb breached that duty in two ways: (1) flatly refusing to cooperate; and (2) making statements to third parties that damage Ecolab's enforcement rights. FAC, Sec. O. Count II seeks damages and an injunction requiring Deb to cooperate. FAC ¶¶ 248-76.

In this Section II, Ecolab explains Deb's refusal to cooperate supports Count II because the refusal is an express breach of Section 4.1. Then, in Section III, *infra*, Ecolab explains Deb's communications represent either an express breach and also support Count II, or, if not, breach of an implied duty as alleged in Count IV or, if not, an intentional tort, as alleged in Count III.

### A. Deb Makes The Same Arguments Against Count II As It Did Count I, And They Fail For The Same Reasons

Deb argues Count II is neither ripe, nor pleads any breach, first citing many of the same

points Deb asserts for dismissal of Count I (D.I. 33 at 15-17). These fail equally here, because: (1) Deb has made an election not to enforce (FAC ¶¶ 107-66; Sec. I, *supra*); (2) Deb has communicated its election to Ecolab (*Id*. ¶¶ 101-66; 232-40; Sec. I, *supra*); and (3) the right to enforce the Deb Patents includes the right to enforce those patents against third parties against whom a license is no longer being enforced, and against whom the patents are not being asserted (*Id*. ¶¶ 167-93. Sec. I(B)(2)(c), *supra*). As to point (1) above, Deb mischaracterizes Ecolab's position to be that Deb has not "elected" until this Court so declares. D.I. 33 at 15. Nonsense. Ecolab's position is clear: Deb *already* has made such an election. FAC ¶ 243; Sec. I, *supra*.

## B. Other Arguments That Count II Is Not Ripe, Or Fails To Plead Breach, Also Fail

### 1. Allegations Of Likely Sales After Sept. 29, 2024 Are Not Speculative

Deb alleges Count II is not ripe because "[t]here is no telling whether there will be any third-party infringers" after Sept. 29, 2024. D.I. 33 at 15. But Ecolab expressly alleged there will be, and alleged a reasonable basis. FAC Sec. E & ¶¶ 214, 281. This basis includes that at least some such companies, including Companies A & B, have been selling such products since at least 2013, and, with the product being foaming hand sanitizer in the post-Covid era, sales can reasonably be expected to continue, certainly for at least the next sixteen months. *Id*. This provides sufficient detail, and is not speculative. This is particularly true here, in the context of a 12(b)(6) Motion. *See, e.g*., *Axogen Corp. v. Integra LifeSciences Corp*., 2021 Del. Super. LEXIS 704, at *7 (Super. Ct. Dec. 13, 2021) ("the existence of . . . a business expectancy is a question of fact not suitable for resolution on a motion to dismiss.") (internal citations omitted). Deb cites *Griffy* for the contrary position (D.I. 33 at 15), but *Griffy* is inapplicable. There, in a class action, plaintiff had not engaged in activity that would give rise to standing. That is not the case here.

Moreover, Deb's claim now that it is "speculative" to allege third parties will be selling covered products after Sept. 29, 2024 (D.I. 33 at 15) is belied by Deb's consent to Section 6. If

such sales were not likely, Deb's confirmation in Section 6 that it would not enforce after that date was unnecessary, and Deb could have said so. Further, Ecolab has alleged Deb informed third parties it would not seek royalties after that date, an allegation Deb has not denied. Plainly, if there were not going to be such sales, no such communication would have been necessary.

### 2.    Ecolab Was Not Required To Name Company A & Company B

Deb also contends (D.I. 33 at 15) Count II fails because Ecolab did not identify by name Companies A & B. FAC, Sec. E. Per Deb, unless named, they must be considered fictional, and allegations relating to them ignored. But this is not the law. *See, e.g.*, *Agilent Techs., Inc. v. Kirkland*, 2009 Del. Ch. LEXIS 11, at *20-21 (Del. Ch. Jan. 20, 2009) (party need not give names where sufficient allegations permit a reasonable inference that specific parties were involved). Indeed, Deb quotes *Organovo* that Ecolab must "identify a specific party," but fails to quote the next sentence, which clarifies that "plaintiff does not need to identify a [specific] party *by name*." *Organovo Holdings, Inc. v. Dimitrov*, 162 A.3d 102, 122 (Del. Del. Ch. 2017) (emph. added). Here, Ecolab pled sufficient details from which it can be inferred the entities are real.

Ecolab expressly alleged Company A had sales above $20M per year, and a royalty rate of at least 5% (FAC ¶¶ 58-71), and made similarly specific allegations about Company B (FAC ¶¶ 72-84). Deb, who gets sales reports and royalties from each company, knows exactly who each is, and its pretense of ignorance (D.I. 33 at 2,7,15,19) violates Fed. R. Civ. P. 11(b)(4). Under *Agilent*, and *Organovo*, this is sufficient. Ecolab only withheld their names out of caution, to avoid Deb contending Ecolab violated some confidence, or adversely impacted its damages case. Deb indeed made such a contention (D.I. 33 at 18), to which Ecolab responds. Sec. III(D), *infra*. Even if the names are necessary, Ecolab should be allowed to amend its FAC. *See* Sec. IV, *infra*.

### 3.    Ecolab Did Allege Breach By Alleging Deb's Refusal To Cooperate At All

Deb argues Count II fails to allege a breach because Ecolab did not allege Deb acted

"unreasonably." D.I. 33 at 16. But except for Deb's wrongful communications addressed in Section III, *infra*, Ecolab's allegation is that Deb flatly refused to cooperate at all, not merely that any cooperation offered was unreasonable. FAC ¶¶ 194-206; 248-76. Refusal, of course, is the height of unreasonableness. On this basis, Deb's citations to *Tendyne* and *Clarke* (D.I. 33 at 16) simply are irrelevant. Both involved situations where, by contract or statute, a particular level of detail in pleading unreasonableness was required. Here, Section 4.1 cites no such standard, and even if it did, alleging ***a flat refusal to cooperate*** would meet any standard.

4. **Deb's Contention That Cooperation Is Sanctionable Is Wrong, And Illustrates Deb's Disregard That Ecolab's Allegations Must Be Accepted As True**

Deb claims Ecolab failed to allege a breach because Ecolab's position would require Deb to cooperate with "sanctionable" litigation. D.I. 33 at 17. But Deb's contention requires assuming claim 29 is invalid. Ecolab has explicitly alleged claim 29 ***is*** valid (FAC, Sec. D), and Deb did not even respond to those allegations. As a result, under Rule 12(b)(6), claim 29 must be assumed valid, and there is no basis to contend any litigation would be "sanctionable." Ecolab notes that Deb's failed argument here is merely one example of the entirety of Deb's Motion, which consistently ignores Ecolab's allegations, and treats Deb's own factual assertions as true. The entire Motion can be denied on that basis. *See* Legal Standards, *supra*.

Deb continues this theme of ignoring Ecolab's allegations when it contends without support (D.I. 33 at 17, n.5), as it has elsewhere (*Id.* at 1, 3), that Ecolab has previously considered claim 29 invalid. But Ecolab specifically alleged to the contrary (FAC ¶¶ 47-56), and those allegations must be accepted. Deb failed to provide any rebuttal, except to comment by footnote that in a ***draft*** Complaint Ecolab sent Deb in the prior litigation, where claim 29 was not cited as being invalid, Ecolab inadvertently listed claim 30 in a list of claims to be invalidated. But Ecolab alleged that even ***at the time*** it made clear the Complaint was a ***draft*** and subject to revision. FAC ¶¶ 36-46. Further, a ***draft*** Complaint presents no binding position, nor creates any

14

estoppel, even if it did state claim 29 was invalid, which it did not. *See, e.g., Quigley Corp. v. Wachovia Ins. Servs.*, 2007 U.S. Dist. LEXIS 49955, at *8-9 (E.D. Pa. July 6, 2007).

### 5. Deb's Cooperation Is Required Pre-Litigation

Deb argues Count II is not ripe because Section 4.1 only requires Deb's cooperation after a lawsuit is filed by Ecolab. D.I. 33 at 15. But Deb made, and lost, this same argument in the parties' prior litigation. *Ecolab,* No. 1:21-cv-720, D.I. 36 at 8 ("Section 4.1 only applies when a lawsuit is filed"). Magistrate Thynge held that, in the context of a Rule 12(b)(6) motion, "whether Deb's interpretation … is the only reasonable one is best decided by a fact-finder, rather than as a matter of law." *Ecolab,* No. 1:21-cv-720, D.I. 59 at 21;  FAC ¶¶ 88-94; 215. Deb should lose again here. Ecolab's interpretation, that "reasonable cooperation" with patent enforcement would be understood to include pre-litigation items, such as providing information relevant to the patent, or about the particular infringer, is not manifestly unreasonable, and thus should not be rejected at this stage. Deb claims Ecolab "mischaracterizes" Magistrate Thynge's opinion (adopted by Judge Andrews), but fails to explain how, and relegates the argument to a footnote. *See Samsung*, 2022 U.S. Dist. LEXIS 135916 at *14; D. Del. LR. 7.1.3(c)(2).

### C. Count II Adequately Alleges A Basis For Relief

Deb asserts Ecolab's allegation of harm is speculative, and cites FAC ¶¶ 263-67 to argue any alleged damage is only from "possible" defenses to future litigation. D.I. 33 at 15-16 & 17-18. But Deb ignores entirely FAC ¶¶ 194-227 & 275, where Ecolab alleges Deb's refusal to cooperate with pre-litigation enforcement is causing Ecolab immediate harm by diminishing its enforcement rights, making them more expensive, and impairing opportunities to mitigate the harm Deb's refusal is causing. These damages are immediate, not speculative. *See* Sec. II(A & B(2)), *supra*. Indeed, Deb has already lost the argument that its duty of cooperation does not extend to pre-litigation cooperation. *See* Sec. II(B)(5), *supra*. Allegations that its refusal of that

duty causes harm are, at this stage, plausible, and sufficient. Ecolab is also harmed by Deb's wrongful third party communications, addressed separately at Sec. III(D), *infra*. At a minimum, Ecolab's allegations demonstrate a need for injunctive relief, which is sufficient.

III.   **Deb's Improper Communications With Third Parties Are Sufficiently Pled As Part Of Count II, Or As The Basis Of Counts III Or IV**

In the FAC, Ecolab pled that Deb has communicated to third parties against whom Ecolab has enforcement rights, where Deb conveyed that all claims of the Deb Patents are invalid, and/or that those parties have no legal obligation to pay royalties after Sept. 29, 2024. *See, e.g.,* FAC ¶¶ 183, 208-10. Deb does not deny these communications. Ecolab alleges these communications interfered with, and damaged, Ecolab's enforcement rights, and directly breached the "duty to cooperate" provision of Section 4.1. *See* Sec. III(A), *infra*; FAC, Count II (inclusive of incorporated allegations regarding Deb's third party communications).

Deb argues Section 4.1 does not expressly prohibit its accused communications. D.I. 33 at 16. Ecolab thus alleges that, if Section 4.1 contains no express prohibition, an implied duty exists barring such communications. *See* Sec. III(B), *infra*; FAC, Count IV. Deb disagrees with this as well. D.I. 33 at 20. As a result, Ecolab alleges that if the contract neither expressly nor impliedly bars such communications, Deb's wrongful communications at least constitute tortious interference with Ecolab's enforcement rights. *See* Sec. III(C), *infra*; FAC, Count III.

A.   **Count II Adequately Pleads Express Breach By Deb's Wrongful Communications**

With respect to Ecolab's allegations regarding Deb's wrongful third party communications, Deb argues Count II fails to state a claim for express breach of contract, citing many of the same reasons it argues why Deb's refusal to cooperate failed to state a claim under Count II, including that Deb made no election, and the like. These are addressed in Sec. II, *supra*. Additional arguments Deb makes with respect to its communications are addressed below.

First, Deb argues the duty to cooperate does not preclude communications to third

parties. D.I. 33 at 16. But Ecolab has alleged a plausible interpretation of Section 4.1 where Deb's making statements that directly interfere with Ecolab's enforcement efforts do constitute a failure to "cooperate." As a second, Deb argues its communications may be excused because it may have most-favored licensee ("MFL") clauses with these companies that require it to communicate changes in royalty rates. D.I. 21 at 19; D.I. 33 at 17. But, as alleged, Deb communicating that its patents are invalid, or that its licenses will no longer be enforceable, is not communicating a rate change, and has nothing to do with any MFL obligation. FAC ¶¶ 205-06. Deb's communications are adequately pled as a direct breach of Section 4.1 in Count II.

**B.   If Count II Did Not Expressly Bar Deb's Communications, It Does So Impliedly**

Deb argues Count IV should be dismissed because it fails to allege harm (addressed, *infra*, Sec. III(D)), and because Ecolab's allegation in Count II that Deb's communications constitute an ***express*** breach of contract means Ecolab cannot also allege they breach an ***implied*** duty in Count IV. D.I. 33 at 20. Ecolab agrees that ***if this Court finds*** Deb's communications expressly breached Section 4.1, then the issue of implied duty need not be considered. But here, Deb ***denies*** any such express duty. D.I. 33 at 16. Were the Court to agree, then Deb's conduct would still breach an implied duty of good faith and fair dealing for all the reasons set forth in Count IV, inclusive of the incorporated paragraphs. Count IV, by alleging an implied duty, is a pleading in the alternative for when no express duty has been found. Fed. R. Civ. P. 8(d)(2 & 3); *Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, 2009 Del. Ch. LEXIS 54, at *18-25 (Del. Ch. Apr. 20, 2009) (permitting pleading an implied duty where plaintiff pled it in the alternative in case court concluded there was no express duty). Even if it were not axiomatic that breach of an implied duty is pled in the alternative to a breach of express duty, Ecolab here confirms Count IV is pled in the alternative, which is sufficient. *Sofregen Med. Inc. v. Allergan Sales, Ltd. Liab. Co.*, 2021 Del. Super. LEXIS 319, at *3, n.16 & *14-16 (Super. Ct. Apr. 1, 2021) (where

plaintiff concedes claims are pled in alternative, they will be treated as such); *Ashland LLC v. Samuel J. Heyman 1981 Continuing Trust*, 2018 Del. Super. LEXIS 267, at *34-35 (Del. Super. Jun. 21, 2018). Count IV is, manifestly, not duplicative of Count II.

### C. If Deb's Communications Do Not Breach An Express Or Implied Duty, Then They Represent Tortious Interference With Ecolab's Enforcement Rights

#### 1. Ecolab's Tortious Interference Claim Is Sufficiently Alleged

Deb cites three reasons why Count III fails to plead tortious interference. D.I. 19-20. Each fail. First, Ecolab did allege Deb's communicating with third parties was wrongful. FAC, ¶¶ 289-93. Second, these allegations are not too generalized. Ecolab specifically alleged that Deb intentionally interfered with Ecolab's rights by wrongfully communicating to third parties. *Id.* And Deb has not denied making such communications. D.I. 21 at 19; D.I. 33 at 17. At least two such parties, Companies A & B, are sufficiently identified to make it clear they are not "suppositious." *See* Sec. II(B)(2), *supra*. Third, and finally, Ecolab did adequately plead damages. *See* Sec. III(D), *infra*. Count III thus alleges a claim for tortious interference, if Section 4.1 does not expressly, nor impliedly, prohibit Deb's communications.

#### 2. Count III Is Not Impermissibly Bootstrapped

Deb argues Count III is barred by the "bootstrapping" doctrine. But that doctrine applies only when the tort duty does not exist independent of the contract, and the tort and contract claims are not pled in the alternative. *Data Mgmt. Internationale v. Saraga*, 2007 Del. Super. LEXIS 412, at *9-11 (Super. Ct. Jul. 25, 2007) (bootstrapping doctrine inapplicable where alleged tort exists independent of any contractual duties). None of these conditions are met here.

In *Data Mgmt.*, the duty not to engage in conversion was held to arise independently of any contract duty regarding tenant's property. *Data Mgmt.,* 2007 Del. Super. LEXIS 412 at *11-14. Here, similarly, once Deb made its election and communicated it, Ecolab's enforcement rights vested immediately, and the duty not to interfere with Ecolab's prospective economic

advantage derived from a tort duty imposed by law, not by contract. Thus, independent of any duty imposed by Section 4.1, Deb was barred by law from such wrongful conduct. As such, "bootstrapping" does not apply. *Id. See also CrewFacilities.com, LLC v. HotelEngine, Inc.,* 2021 U.S. Dist. LEXIS 119769, at *12 (D. Del. June 28, 2021) (J. Andrews) (independent of any contract obligation, defendant has common law duty not to tortiously interfere).

But bootstrapping also does not apply here because Ecolab intends Count III ***to be in the alternative***, and to provide a basis for liability ***only*** if this Court finds Deb's wrongful communications are not barred by express or implied contractual duties. In this unlikely event, Deb's wrongful communications would not constitute breach of contract. But they still could constitute tortious interference. The facts that would prove the intentional tort then would not also prove breach of contract, and bootstrapping would not apply. *CrewFacilities,* 2021 U.S. Dist. LEXIS 119769 at *10-13 (bootstrapping only applies if same facts prove breach of contract ***and*** alleged tort). Such alternative pleading is allowed. Fed. R. Civ. P. 8(d)(2 & 3).

While Ecolab acknowledges Count III could have been more explicitly pled to be in the alternative, Ecolab confirms here it is intended only in the alternative, which is sufficient. *Sofregen*, 2021 Del. Super. LEXIS 319 at *3, n.16 & *14-16 (if claims not explicitly pled in the alternative, but plaintiff concedes they are in the alternative, dismissal for bootstrapping denied because tort treated as pled in alternative); *Ashland*, 2018 Del. Super. LEXIS 267 at *34-35 (where plaintiff concedes tort pled in the alternative, then claims "would never co-exist at final judgment and are … not duplicative."). Even if the Court concludes the FAC needs to more clearly state Count III is in the alternative, Ecolab should be permitted to amend. Sec. IV, *infra*.

Deb's cases are distinguishable. In *Talley*, plaintiff alleged misrepresentation, but "nowhere … assert[ed]" any misrepresentation, nor pled the tort elements. *Talley v. Christiana Care Health Sys*., 2019 U.S. Dist. LEXIS 25881, at *15-16 (D. Del. Feb. 19, 2019). In *Cornell*,

plaintiff only alleged defendant made promises to pay under contract, then delayed and did not make the payments, but alleged nothing else to plead a tort. *Cornell Glasgow, LLC v. La Grange Properties LLC*, 2012 Del. Super. LEXIS 266, at \*27 (Super. Ct. June 6, 2012). Here, in contrast, Ecolab explicitly pleads the tort, and sufficiently pleads supporting factual allegations. FAC, Count III (inclusive of incorporated allegations regarding Deb's third party communications).

## D.   Ecolab Adequately Pled Harm From Deb's Wrongful Communications

Deb cursorily states Ecolab did not plead harm from Deb's wrongful communications, and contends Counts III & IV should be dismissed on this basis, as should Count II to the extent it relies upon those communications. D.I. 33 at 17-18 & 20. But Ecolab pled harm in great detail, including impairment of its enforcement rights, inhibiting an ability to mitigate the harm, and more. FAC, Secs. P-R, ¶¶ 264-67, 293-96, 306-14. And, contrary to Deb, Ecolab pled sufficient facts from which it can be seen that Companies A & B are not "fictional." *See* Sec. II(B)(2), *supra*. Deb also states (D.I. 33 at 18), without explanation, that any damage caused by its communications have been mooted by Ecolab's filing of the FAC. Even if this were true, Ecolab only had to file the FAC because of Deb's misconduct, and it is still Deb that caused the harm.

## IV.   Dismissal With Prejudice Would Be Improper

In the event the Court concludes some part of the FAC is insufficiently pled, then, consistent with the Third Circuit's jurisprudence, Ecolab requests this Court allow it an opportunity to amend. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d. Cir. 2008). While Deb summarily asks the Court to "dismiss … with prejudice," Deb fails to provide any basis, nor explain why any amendment would be futile. Deb is barred from doing so on reply.

## <u>CONCLUSION</u>

On the bases stated herein, Ecolab respectfully requests the Court deny Deb's Motion.

OF COUNSEL:

POTTER ANDERSON & CORROON LLP

W. Bryan Farney
Cassandra Klingman
Caryn Cross
Jennifer Towle
Farney PC
1008 S. Main Street
Georgetown, TX 78626
(512) 582-2810

By:  /s/ Jonathan A. Choa
     Jonathan A. Choa (#5319)
     P.O. Box 951
     Wilmington, DE 19899
     (302) 984-6000
     jchoa@potteranderson.com

*Attorneys for Plaintiffs Ecolab Inc. and Ecolab USA Inc.*

Dated: July 31, 2023
10944631

21