IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ECOLAB INC. AND ECOLAB USA, INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 23-170-RGA |
| ) | |
| SC JOHNSON PROFESSIONAL GROUP ) | |
| LTD. (F/K/A DEB GROUP LTD.) AND ) | |
| DEB IP LIMITED, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Presently before the court in this diversity action for breach of contract and related causes of action is a motion to dismiss the first amended complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), filed by defendants SC Johnson Professional Group Ltd. and Deb IP Limited (collectively, "Deb Group").[1] (D.I. 32) For the following reasons, I recommend that the court GRANT Deb Group's motion to dismiss without prejudice.

## I.   BACKGROUND

Plaintiffs Ecolab Inc. and Ecolab USA, Inc. (collectively, "Ecolab") manufacture, market, and sell alcohol-based hand sanitizers and other skin care products. (D.I. 31 at ¶ 4) In March of 2013, the parties entered into a license agreement (the "License Agreement") which granted Ecolab a non-exclusive, royalty-bearing license to sell hand sanitizer products covered by certain Deb Group patents (the "Deb Group Patents"). (*Id.* at ¶¶ 17, 19-21) The License Agreement included a provision giving Ecolab the right to enforce the Deb Group Patents under certain circumstances:

---

[1] The briefing on the motion to dismiss is found at D.I. 33, D.I. 34, and D.I. 35.

> 4.1 DEB GROUP will take commercially reasonable steps to enforce its patents. Should DEB GROUP elect, at its sole discretion, to not enforce their own patents against a third party infringer, ECOLAB shall have the right to assert the patents against such third party infringers at its own expense, including payment of all expenses incurred by DEB GROUP if it is necessary for DEB GROUP to be a party to the litigation. The non-litigating party will provide all reasonable cooperation, in a non-pecuniary way, in pursuing such actions against such third party infringers. In the event there is a recovery under an action brought by either party, the litigating party shall receive all recoveries.

(*Id.* at ¶¶ 26-27; D.I. 2, Ex. A at § 4.1)

Seven years after entering into the License Agreement, in March of 2020, Ecolab wrote to Deb Group to request additional information and confirm whether it was paying the correct royalty rate. (D.I. 31 at ¶ 29) Deb Group refused to disclose the identities of alleged third-party infringers who had licensed the Deb Group Patents, and Ecolab maintained that Deb Group was required to disclose this information in accordance with the Most Favored Licensee ("MFL") clause at Section 7 of the License Agreement. (*Id.* at ¶¶ 30-31) Ecolab also argued that Deb Group had breached its obligations under Section 4.1 of the License Agreement by failing to use commercially reasonable steps to enforce its patents against third-party infringers and by failing to inform Ecolab of Deb Group's election not to enforce. (*Id.* at ¶¶ 32-35)

On October 19, 2020, Ecolab sent a draft complaint to Deb Group, threatening to challenge the validity of certain claims of the two latest-expiring Deb Group Patents (U.S. Patent Nos. 8,309,111 ("the '111 patent") and 8,313,758 ("the '758 patent")) under a theory of obviousness-type double patenting because no terminal disclaimers were filed for those patents. (*Id.* at ¶¶ 36-42, 51) In response, Deb Group represented it would not compel Ecolab to pay royalties on the two patents after September 29, 2024, because all claims of the Deb Group Patents are unenforceable after that date in view of the obviousness-type double patenting issue. (*Id.* at ¶¶ 43-46) In the FAC, however, Ecolab maintains that at least claim 29 of the '111 patent

is not invalid under the doctrine of obviousness-type double patenting. (*Id.* at ¶¶ 47-49) As a result, Ecolab avers enforcement of at least claim 29 of the '111 patent against infringing third parties should be permitted until the '111 patent expires on January 25, 2030. (*Id.* at ¶¶ 52, 63)

On May 20, 2021, Ecolab sued Deb Group for breach of Section 4.1 of the License Agreement by failing to uphold Ecolab's contractual rights to enforce the Deb Group Patents, among other claims (the "2021 Litigation"). (*Id.* at ¶¶ 86, 88) Deb Group moved to dismiss Ecolab's cause of action for breach of Section 4.1 of the License Agreement, and the court recommended denial of Deb Group's motion to dismiss in April of 2022. (*Id.* at ¶¶ 88-93) After the deadline for objections expired with no objections being filed, the District Judge adopted the Report and Recommendation denying Deb Group's motion to dismiss on May 3, 2022. (*Id.* at ¶ 94)

The parties subsequently exchanged a series of draft settlement agreements. (*Id.* at ¶¶ 95-100) On June 27, 2022, Deb Group forwarded the executed Settlement Agreement and an amendment to the License Agreement to Ecolab. (*Id.* at ¶ 101) Under Section 6 of the executed Settlement Agreement, Deb Group agreed not to enforce the Deb Group Patents in the United States against any of its licensees after September 30, 2024:

> 6. Enforcement Confirmation. Deb Group confirms it will not seek to enforce the DEB GROUP Patents in the United States, nor collect royalties thereon, for activities carried out in the United States by Deb Group licensees on or after September 30, 2024. For the avoidance of doubt, this confirmation does not impact Ecolab's or other DEB Group licensees' obligations under the License Agreement to pay royalties on the Licensed Products used, manufactured, sold or offered for sale or resale in all countries other than the U.S., for as long as the DEB GROUP Patents remain in force in those countries. . . .

(*Id.* at ¶¶ 98-100, 104; D.I. 2, Ex. B at § 6) The amended License Agreement added Section 4.1(a), which provided as follows:

3

> Beginning on the Amendment Date, Deb Group shall have no affirmative obligation to ECOLAB pursuant to this Section 4.1 to take any steps to enforce its patents. No action or inaction other than an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement shall be deemed an election by Deb Group not to enforce its patents pursuant to this Section 4.1. For purposes of clarity, Ecolab acknowledges that prior to the Amendment Date Ecolab has not received any election by Deb Group not to enforce its patents, and silence by Deb Group, or any absence of communication from Deb Group, shall not be considered an affirmative communication of any election.

(D.I. 31 at ¶ 105; D.I. 2, Ex. C at § 1.5)

The 2021 Litigation was dismissed on July 5, 2022. (D.I. 31 at ¶ 102) Two days later, Ecolab provided notice to Deb Group that Section 6 of the Settlement Agreement satisfied the requirements of Section 4.1 of the License Agreement, and Ecolab was exercising its right to enforce the Deb Group Patents after September 29, 2024 based on its determination that "one or more claims of the U.S. Deb Group Patents will remain valid and enforceable after September 29, 2024." (*Id.* at ¶¶ 116-17) On August 24, Deb Group responded that Ecolab had no right to enforce the Deb Group Patents after September 29, 2024 and stated its position that Deb Group had not made an election not to enforce the Deb Group Patents under Section 4.1 of the License Agreement, nor would it cooperate with Ecolab's enforcement efforts pursuant to that provision. (*Id.* at ¶¶ 120-22)

In an October 3 letter, Ecolab provided formal notice that it considered Deb Group's position to be a material breach of the License Agreement. (*Id.* at ¶¶ 123-25) Deb Group responded on December 1, reiterating that it "did not make an election under Section 4.1 of the License Agreement, nor has [Deb Group] refused to comply with its obligations under Section 4.1 of the License Agreement. As such, there has been no material breach of the License Agreement." (*Id.* at ¶ 127; D.I. 2, Ex. J)

4

Ecolab filed the instant litigation on February 15, 2023, asserting causes of action for breach of certain provisions of the License Agreement and seeking a declaratory judgment of its right to enforce the Deb Group Patents after September 29, 2024. (D.I. 2 at ¶¶ 46-80) Deb Group moved to dismiss the complaint on May 18, 2023. (D.I. 21) Before briefing was complete on the motion to dismiss, Ecolab filed the FAC. (D.I. 31) Deb Group filed the pending motion to dismiss the FAC on July 7, 2023. (D.I. 32) Briefing was completed on August 10, 2023, and the District Judge referred the pending motion to the undersigned Magistrate Judge on October 4, 2023. (D.I. 35; D.I. 37)

## II.    LEGAL STANDARD

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true in the light most favorable to the plaintiff, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead

5

"simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### III. DISCUSSION

Ecolab's FAC amounts to an attempt to manufacture a new set of claims against Deb Group based on the terms of the Settlement Agreement and amended License Agreement, which were meant to resolve the claims previously brought by Ecolab against Deb Group in the 2021 Litigation. Section 6 of the Settlement Agreement, which states that Deb Group will not collect royalties from its licensees on or after September 30, 2024, was the result of Ecolab's averment in the 2021 Litigation that "claims" of the '111 and '758 patents would be invalid after that date under a theory of obviousness-type double patenting. (D.I. 31 at ¶¶ 36-42) After succeeding in its efforts to avoid paying royalties to Deb Group beyond September of 2024, Ecolab now reverses course, arguing that at least claim 29 of the '111 patent remains valid through January of 2030. (*Id.* at ¶¶ 47-52, 63) In this manner, Ecolab attempts to construe Deb Group's acquiescence to Ecolab's invalidity theory as an election not to enforce the Deb Group Patents after September of 2024, thereby triggering Ecolab's right to collect royalties from third-party infringers while simultaneously avoiding any obligation to make its own royalty payments to Deb Group. For the following reasons, Ecolab's claims in the FAC are not plausible.

### A. Count I: Declaratory Judgment

At Count I of the FAC, Ecolab seeks a declaratory judgment that it has the right to enforce the Deb Group Patents on or after September 30, 2024 due to Deb Group's affirmative written communications of an election not to enforce those patents. (D.I. 31 at ¶ 243) Section 4.1(a) of the amended License Agreement sets forth the requirements for making an election to enforce the Deb Group Patents: "No action or inaction other than an affirmative written communication of an election by Deb Group to the Ecolab counsel identified in Section 7 of the Settlement Agreement[2] shall be deemed an election by Deb Group not to enforce its patents" against third-party infringers. (D.I. 31 at ¶ 105; D.I. 2, Ex. C at § 1.5) According to Ecolab, Deb Group satisfied these requirements in three written communications, thereby triggering Ecolab's enforcement rights under Section 4.1 of the License Agreement: (1) Section 6 of the Settlement Agreement; (2) Deb Group's letter dated December 1, 2022; and (3) Deb Group's opening brief in support of its motion to dismiss the original complaint in this action. (*Id.* at ¶¶ 234-38) Deb Group argues that Count I should be dismissed because none of these three documents constitutes an election not to enforce the Deb Group Patents under Section 4.1 of the License Agreement. (D.I. 33 at 8-12)

Because the FAC does not plausibly allege that any of the three written communications constitutes an election not to enforce the Deb Group Patents, I recommend that the court GRANT Deb Group's motion to dismiss Count I of the FAC.

---

[2] Section 7 of the Settlement Agreement provides that notice "shall be in writing, delivered personally or sent by express courier service providing evidence of receipt, postage pre-paid where applicable," to the addresses of Ecolab's Chief Intellectual Property Counsel in St. Paul, Minnesota, with a copy to Bryan Farney and Cassandra Klingman of Farney PC in Georgetown, Texas. (D.I. 2, Ex. B at § 7)

7

### 1. Section 6 of the Settlement Agreement cannot plausibly be construed as a notice of election.

As a preliminary matter, Ecolab's position that Section 6 of the Settlement Agreement constitutes an affirmative election not to enforce the Deb Group Patents is not plausible in the broader context of the parties' dispute. The parties executed the Settlement Agreement in June of 2022 to resolve Ecolab's claims that Deb Group failed to uphold Ecolab's contractual right to enforce the Deb Group Patents. (D.I. 31 at ¶¶ 88, 100-01, 104) On the same day, the parties amended Section 4.1 of the License Agreement to clarify that Deb Group has no affirmative obligation to Ecolab to either enforce or elect not to enforce the Deb Group Patents. (*Id.* at ¶ 105) Amended Section 4.1(a) expressly stated that Deb Group had made no affirmative election not to enforce its patents. (*Id.*) Ecolab's FAC attempts to transform Section 6 of the Settlement Agreement into an election, even though the amended License Agreement executed on the same day confirms that no election had been made and Deb Group had no affirmative obligation to trigger Ecolab's enforcement rights.

Deb Group presents several additional arguments in support of its position that Section 6 of the Settlement Agreement is not a notice of election under Section 4.1 of the License Agreement. (D.I. 33 at 8-12) The most compelling is Deb Group's position that Section 6 is limited in its application to enforcement of the Deb Group Patents against "licensees" after September 29, 2024, whereas Section 4.1 applies to enforcement of the Deb Group Patents against third-party infringers. (*Id.* at 9) Because licensees and third-party infringers are fundamentally different categories, and because Section 4.1 only gives Ecolab enforcement rights against third-party infringers, Deb Group maintains that Section 6 cannot be construed as an election not to enforce the Deb Group Patents against third-party infringers under Section 4.1. (*Id.* at 9-10)

8

Ecolab responds that the term "third-party infringer" may encompass licensees because an election not to enforce the Deb Group Patents against third-party infringers can include a refusal to collect royalties against licensees under Section 6. (D.I. 34 at 7-8) Ecolab suggests that any other interpretation would effectively negate its enforcement rights under Section 4.1 because Deb Group could enter into "Potemkin licenses"[3] with third-party infringers and make no effort to collect royalties, thereby transforming these third-party infringers into licensees. (*Id.* at 8-9)

The FAC does not plausibly allege that Section 6 of the Settlement Agreement constitutes an election pursuant to Section 4.1 of the License Agreement. The FAC's definitions and explanations of the terms "third-party infringer" and "licensee" are legal arguments and conclusory statements, and the court need not accept them as true. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 603 (D. Del. 2011) ("Nor is the Court obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false." (internal citations and quotation marks omitted)). To the extent that the FAC's explanations of the terms "third-party infringer" and "licensee" are not consistent with the way those terms are used in the License and Settlement Agreements, the License and Settlement Agreements control. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

---

[3] Ecolab's reference to a "Potemkin" license appears to be an allusion to a Potemkin village, signifying a "façade or show designed to hide an undesirable fact or condition." (D.I. 34 at 8-9); *see* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/Potemkin%20village, *archived at* https://perma.cc/9FTA-PRPF.

Moreover, the FAC's averment that a licensee is equivalent to a third-party infringer is not facially plausible. The FAC alleges that the phrase "third-party infringer," as used in Section 4.1, encompasses licensees against whom Deb Group does not enforce its patents by foregoing royalty payments under Section 6 of the Settlement Agreement. (D.I. 31 at ¶¶ 173, 176, 187) But Deb Group's decision not to collect royalties from a licensee cannot plausibly transform the licensee into a third-party infringer because a non-exclusive license is, by definition, "a covenant by the patent owner not to sue the licensee[.]" *Monsanto Co. v. Aventis Cropscience SA*, 226 F. Supp. 2d 531, 539 (D. Del. 2002); *see also Horizon Meds. LLC v. Apotex Inc.*, C.A. No. 22-640-CJB, 2022 WL 16739909, at *4 (D. Del. Nov. 7, 2022) ("[T]he grant of a non-exclusive patent license is, in essence, a promise by the licensor not to sue the licensee."). The use of the terms "third-party infringer" and "licensee" in separate sections of the License Agreement further confirms that the terms are not synonymous. (D.I. 2, Ex. A at §§ 4.1, 7) On its face, Section 6 of the Settlement Agreement applies only to Deb Group's enforcement rights against its licensees and does not mention enforcement of the Deb Group Patents against third-party infringers by Deb Group or its licensees. (D.I. 31 at ¶¶ 98-100, 104; D.I. 2, Ex. B at § 6)

Ecolab's concerns about Deb Group granting "Potemkin licenses" that would negate Ecolab's enforcement rights are not persuasive. The plain language of Section 4.1(a) provides that "Deb Group shall have no affirmative obligation to ECOLAB pursuant to this Section 4.1 to take any steps to enforce its patents. No action or inaction other than an affirmative written communication of an election by Deb Group to [ ] Ecolab . . . shall be deemed an election by Deb Group not to enforce its patents pursuant to this Section 4.1." (D.I. 31 at ¶ 105; D.I. 2, Ex. C at § 1.5) In accordance with this provision, Deb Group can restrict Ecolab's enforcement

rights simply by not making an affirmative election not to enforce. There is no need for Deb Group to draft nominal licenses with no intention of enforcing them to achieve this.

In sum, Ecolab's position that its enforcement rights are triggered by Deb Group's decision not to enforce the Deb Group Patents against its licensees is not consistent with Section 4.1(a), which establishes that Ecolab may only enforce the patents against third-party infringers if and when Deb Group makes an affirmative election under Section 4.1 of the License Agreement. Deb Group's representation that it will not enforce the Deb Group Patents against its licensees on or after September 30, 2024 in Section 6 of the Settlement Agreement does not plausibly amount to an affirmative election not to enforce the patents against third-party infringers or otherwise address the enforcement rights of its licensees.

### 2. Deb Group's December 1, 2022 statement cannot plausibly be construed as an election.

The FAC alleges that Deb Group's December 1 statement qualifies as an election under Section 4.1 because Deb Group represented that the claims of the '111 and '758 patents are "all [ ] subject to an invalidity challenge" after September 29, 2024. (D.I. 31 at ¶ 134; D.I. 2, Ex. I at 2) Deb Group argues that the December 1 statement does not amount to an election under Section 4.1 because the same letter expressly states that Deb Group "did not make an election under Section 4.1 of the License Agreement." (D.I. 33 at 12) But Ecolab counters that the language about the invalidity challenge confirms Deb Group has chosen not to enforce its patents after September 29, 2024, and this choice amounts to an election regardless of whether the December 1 letter uses the word "election." (D.I. 34 at 4)

Ecolab attempts to transform the December 1 letter into an election not to enforce the Deb Group Patents, even though the contractual requirements for making an election have not been satisfied. Deb Group's December 1, 2022 statement cannot plausibly be read to suggest

11

that Deb Group is electing not to enforce its patent rights.[4] While the statement says that the claims of the '111 and '758 patents are subject to an invalidity challenge after September 29, 2024, Deb Group does not affirmatively elect not to enforce those patents as a result of the invalidity challenge. (D.I. 31 at ¶ 134; D.I. 2, Ex. I at 2) An election not to enforce the patents does not automatically flow from an acknowledgement that those patents are subject to an invalidity challenge, absent "an affirmative written communication of an election by Deb Group" as required under Section 4.1(a). To eliminate any doubt, the December 1 statement explicitly says that Deb Group "has not, and does not in this letter, take a position on its rights and obligations under Section 4.1," and it "did not make an election under Section 4.1 of the License Agreement[.]" (D.I. 2, Ex. I at 2; Ex. J at 1) No reasonable factfinder could construe this communication as an election under Section 4.1 of the License Agreement.

### 3. Deb Group's motion to dismiss the original complaint cannot plausibly be construed as an election.

Ecolab's attempt to transform Deb Group's efforts to defend itself into a formal election not to enforce the Deb Group Patents is also implausible for reasons similar to those given in connection with the December 1, 2022 statement. As Deb Group explains, its opening brief in support of the motion to dismiss the original complaint spends at least eight pages discussing how Deb Group never made an election not to enforce its patents under Section 4.1. (D.I. 33 at 13; D.I. 21 at 1, 9-17) No reasonable factfinder could plausibly construe the motion to dismiss as an affirmative election not to enforce the patents. For the reasons previously stated at § III.A.2, *supra*, Deb Group's assertion that the patents are invalid after September 29, 2024 does

---

[4] The December 1, 2022 statement attaches and incorporates by reference Deb Group's correspondence dated November 30, 2022, which is separately attached as Exhibit I to the original complaint. (D.I. 2, Exs. I-J; D.I. 31 at ¶ 134)

not amount to "an affirmative written communication of an election by Deb Group" as required under Section 4.1(a).

### B. Count II: Breach of Contract

Count II of the FAC alleges a cause of action for breach of contract based on Deb Group's alleged refusal to reasonably cooperate with Ecolab's right to enforce the Deb Group Patents. (D.I. 31 at ¶¶ 248-76) The FAC acknowledges that Ecolab's right to enforce the Deb Group Patents and Deb Group's corresponding duty to provide reasonable cooperation arise only when Deb Group elects not to enforce the Deb Group Patents. (*Id.* at ¶¶ 252-53) In the absence of an election, the claim is not ripe because there can be no breach for failure to provide reasonable cooperation. Having determined that the FAC fails to plausibly plead an election not to enforce by Deb Group for the reasons stated at § III.A, *supra*, I further recommend that the court dismiss Count II of the FAC for breach of contract.

### C. Count III: Tortious Interference with Prospective Economic Advantage

Deb Group next argues that Count III of the FAC should be dismissed because it is barred by the "bootstrapping" doctrine, which prohibits repackaging a breach of contract claim as a tort claim. (D.I. 33 at 18) According to Deb Group, the FAC contains no allegations that Deb Group breached an "independent duty" beyond those duties included in the agreement. (*Id.*) Ecolab responds that the duty not to interfere with Ecolab's prospective economic advantage arose independent of any contractual duty imposed by Section 4.1 after Deb Group made its election and communicated it. (D.I. 34 at 18-19)

Count III of the FAC is premised on the assumption that Deb Group made an election not to enforce the Deb Group Patents after September 29, 2024. (D.I. 31 at ¶¶ 278-79) For the reasons previously discussed at § III.A, *supra*, the FAC does not plausibly allege that Deb Group

made an election. The pleaded allegations make clear that Deb Group's duty not to interfere with Ecolab's prospective economic advantage depends on Deb Group making an election under the terms of the License Agreement. (*Id.*) The alleged business opportunity is the ability to collect royalties from enforcement of the Deb Group Patents against third-party infringers, which is expressly covered by Section 4.1 of the License Agreement. (*Id.* at ¶¶ 280-82) Because the FAC does not identify a duty in tort that is independent of any contractual duty at Count III, the cause of action cannot survive. *See Talley v. Christiana Care Health Sys.*, C.A. No. 17-926-CJB, 2019 WL 668272, at *4 (D. Del. Feb. 19, 2019) ("[P]ursuant to the bootstrapping doctrine, although the same conduct may give rise to a breach of contract claim and a tortious interference claim, a plaintiff bringing a tortious interference claim must allege breach of an independent duty imposed by law, rather than a duty which arises . . . by mere agreement of the parties." (internal quotations and citations omitted)).

Ecolab argues that it intended to plead Count III only in the alternative, but it acknowledges that this argument is not supported by the FAC. (D.I. 34 at 19) ("While Ecolab acknowledges Count III could have been more explicitly pled to be in the alternative. . . ."). For these reasons, I recommend that the court dismiss Count III of the FAC.

### D. Count IV: Breach of the Duty of Good Faith and Fair Dealing

Deb Group maintains that Count IV of the FAC should be dismissed because a cause of action for breach of the duty of good faith and fair dealing is precluded where, as here, the alleged breach is directly addressed in a contractual agreement and no implied duty is alleged in the FAC. (D.I. 33 at 20) Ecolab represents that Count IV is pleaded in the alternative if no express contractual duty is found. (D.I. 34 at 17)

Again, Ecolab's allegations at Count IV of the FAC are based on the presumption that

14

Deb Group elected not to enforce the Deb Group Patents after September 30, 2024. (D.I. 31 at ¶ 301) Moreover, the implied duty alleged in the FAC—to not communicate with third parties in a manner that diminishes Ecolab's enforcement rights—is expressly covered by Section 4.1 of the License Agreement, which requires Deb Group to reasonably cooperate with Ecolab's enforcement efforts once Deb Group has made an election not to enforce. (*Id.* at ¶¶ 302-03) Because the License Agreement "directly addresses the matter at hand, [e]xisting contract terms control . . . such that implied good faith cannot be used to circumvent the parties' bargain." *MHS Capital LLC v. Goggin*, 2018 WL 2149718, at *12 (Del. Ch. May 10, 2018) (internal quotations and citations omitted). Consequently, I recommend that the court grant Deb Group's motion to dismiss Count IV of the FAC.

## IV.   CONCLUSION

For the foregoing reasons, I recommend that the court GRANT Defendants' motion to dismiss the FAC pursuant to Rule 12(b)(6). (D.I. 32) I recommend that the court dismiss the FAC without prejudice in accordance with Ecolab's request for leave to amend. (D.I. 34 at 20); *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."). Ecolab may seek leave to amend the pleading within ten (10) days of the expiration of the objections period or the resolution of objections by the District Judge.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 6, 2024

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE